[No. A024402. First Dist., Div. Five. Dec. 19, 1984.]

ANNE B., Plaintiff and Appellant, v.
STATE BOARD OF CONTROL, Defendant and Respondent.

**COUNSEL**

McCutchen, Doyle, Brown & Enersen, Antonio Rossmann, Beth H. Parker, Barry P. Goode and Mary Curran for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, N. Eugene Hill, Assistant Attorney General, Harold W. Teasdale and Gordon Zane, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

HANING, J.—Petitioner/appellant Anne B. (appellant) appeals from the denial of her petition for writ of administrative mandamus (Code Civ. Proc., § 1094.5) and for declaratory judgment (Code Civ. Proc., § 1060) that she is entitled to benefits under the Victims of Violent Crime Act (Act), Government Code section 13959 et seq.[1] Appellant requested benefits before respondent State Board of Control (Board), the agency charged with approving or denying applications for financial assistance under the Act. (§§ 13960, subd. (d), 13964.) Upon hearing and subsequently rehearing appellant's claim, the Board denied her benefits. For reasons hereafter set forth, we reverse.

According to a report by the El Cerrito Police Department, on June 12, 1981, Percy P. assaulted, raped, and attempted to orally copulate and sodomize appellant. He threatened to kill her daughter and her friends. He stayed through the night, demanding that appellant not use the phone, and left the next morning. Appellant reported the offense to the police in the early evening of the 14th. The police report indicated that appellant complained of soreness in her ribs and shoulders, and that a doctor's examination at sexual trauma services revealed trauma to her jaw, lower lip, and thorax. The doctor's vaginal examination revealed evidence of ejaculation. The police report concluded appellant was forcefully raped and sodomized, and referred the case to the district attorney "for review and complaint."

Appellant informed the police she had known Percy P. for at least eight years. She stated that in 1973 he raped her, but she did not report it because of his threats that he would kill her if she did. She did not see him again for about three years; he then came to her home and apologized for his actions. She went out with him occasionally during 1976 and 1977. Appellant stated that during 1978 she "finally fell in love with" Percy P. He moved in with her, and again physically abused her several times. She did not report him at first, because his threats made her fearful for her life and that of her child. The third time he beat her, however, she had him removed by the police. Appellant stated that although the relationship was over, Per-

---

[1]Unless otherwise indicated, all further statutory references are to the Government Code.

cy P. continued to appear uninvited at her home, her place of employment, and her child's school.

Appellant cooperated fully with the police and the district attorney's office. The district attorney, however, decided not to prosecute. A deputy district attorney told appellant she would have to endure a "grueling and most likely unsuccessful" experience in trying to convict her assailant. While at the district attorney's office, appellant was approached by Dorothy Laitone, a program coordinator of the Contra Costa Victim/Witness Assistance Program (Program). The Program, affiliated with the Contra Costa District Attorney's office, is authorized by statute to assist and counsel victims of crimes and, specifically, to assist them in preparing and presenting claims to the Board for benefits under the Act. (Pen. Code, § 13835 et seq.) Laitone encouraged appellant to obtain therapy and assured her the state would pay for all medical fees, including psychotherapy. Shortly thereafter, appellant was again encouraged to seek counseling and referred to a therapist by another employee of the Program, Dechantal Hughes. Hughes assured appellant that state funds would be available to cover the costs of such therapy. Neither Laitone nor Hughes made clear to appellant that state funds were available only upon approval by the Board.

Appellant received psychotherapy from Dr. Steven Walch of the Berkeley Therapy Institute from July 1981 to August 1982, at a total charge of $4,140. Dr. Walch was also repeatedly assured by Hughes that the Program would pay for his services. He had received such assurances in connection with other patients, had treated them in reliance thereon, and had ultimately been paid.

Enclosed in appellant's application to the Board for assistance was a letter from Hughes on the Contra Costa County District Attorney's letterhead stationery, explaining: "Our office has made a decision not to file a formal complaint against Ms. B's attacker, [Percy P.]. Reasons being that Ms. B and Mr. [Percy P.] have had an on-off relationship for eight years." The letter went on to say, "Ms. B has been completely cooperative with this office and law enforcement."

In May 1982, over nine months after receipt of appellant's application, the Board notified her that its staff had recommended the Board itself deliberate regarding her eligibility, for the following reason: "No verification of a violent crime, specifically a complaint was not filed against suspect because of the on-off relationship between victim and suspect."

In August 1982, the Board met to determine whether a violent crime had in fact occurred. Hughes attended the hearing, but appellant did not; Hughes

had informed her that her presence was not mandatory. Before the Board were two letters from Dr. Walch, one of which indicated appellant had "suffered a Post Traumatic Stress Disorder as a result of the violence she experienced in her relationship with Mr. [Percy P.]."

During the hearing, one Board member stated: "[I]t appears to me that without a criminal complaint or even a charge having been filed, that we are in a situation where we do not have, at least officially, a record of a crime's commission and I think we're in a position where we can't really grant this claim under the circumstances and I'm prepared to move that we deny it." Two Board members then acknowledged there was no issue of lack of cooperation on appellant's part. One continued to say: "[T]he police and/or the district attorney didn't choose to file a complaint and without that I'm rather reluctant to supersede my judgment in a situation like this and say yes, there was a crime, when they said no, there wasn't." The Board thereupon denied the claim.

Appellant received written notice of the denial, which stated that the Board denied her claim "for the reason(s) previously supplied by the staff," i.e., "[n]o verification of a violent crime, specifically a complaint was not filed against suspect because of the on-off relationship between victim and suspect."

Appellant requested a reconsideration of the Board's decision in writing and within sixty days as required by section 13969.1, subdivision (b). The Board met on October 18, 1982, and decided to reconsider the claim at that time. Appellant was present at the reconsideration hearing. The Board had before it a new letter from Dr. Walch, again stating his conviction that appellant had in fact been the victim of violence. A Board member noted that the police report contained "very specific medical evidence" that appellant had suffered traumatic injuries. Another Board member stated: "[W]e are again put in the position of having to make a determination that a crime occurred when the police agency involved, other official agencies involved, refused for whatever reason to make that determination. I'm not saying we can't do that because we clearly do, in some instances, make a determination that a crime occurred when these agencies have recently, for whatever reasons, . . ." Appellant interjected: "May I question, then, if in fact that an assailant is not found, do you then deny a claim to a victim because there was no prosecution obtained?" The Board member replied: "I just indicated to you that we don't always, but we do sometimes. That we look at the circumstances and we make a judgment based on the circumstances as to what we could do. We did do that. We were very much aware of all the things that you just got done telling us. We may have been wrong when we made that determination [that a crime did not occur] but the de-

termination was made. We can't go on reviewing and going over. You know, certainly we are sympathetic to you and your situation, but this book is full of beatings and killings and stabbings and rapes and tears that we hear day in and day out." Misconstruing the obvious purpose of a rehearing, the Board again denied appellant's claim, whereupon she filed the instant petition and complaint.

The trial court denied appellant's petition and complaint without a statement of decision. Code of Civil Procedure section 1094.5 provides that a writ of administrative mandamus shall issue where there was any prejudicial abuse of discretion by the administrative body. (Code Civ. Proc., § 1094.5, subd. (b).) ▇ Where, as here, the petitioner has no vested right at stake, "abuse of discretion is established if the court determines that the findings are not supported by substantial evidence in the light of the whole record." (Code Civ. Proc., § 1094.5, subd. (c); 5 Witkin, Cal. Procedure (2d ed. 1971) Extraordinary Writs, §§ 217-222, pp. 3974-3978.) Where the trial court applies the substantial evidence test to review an administrative proceeding, the appellate court applies the same test. (*McCarthy* v. *California Tahoe Regional Planning Agency* (1982) 129 Cal.App.3d 222, 228-229 [180 Cal.Rptr. 866]; 5 Witkin, Cal. Procedure (1983 pocket supp.) Extraordinary Writs, § 217, p. 355.) Thus, we review the administrative record to determine if the board's decision was supported by substantial evidence.

Section 13964, subdivision (a), states that the Board shall approve an application for benefits under the Act "if a preponderance of the evidence shows that as a direct result of the crime the victim incurred an injury which resulted in a pecuniary loss." "Crime" is defined in section 13960, subdivision (c), as "a crime or public offense as defined in Section 15 of the Penal Code which results in injury to a resident of this state . . . ." Penal Code section 15 defines a crime as: "[A]n act committed or omitted in violation of a law forbidding or commanding it, and to which is annexed, upon conviction, either of the following punishments: (1) Death; (2) Imprisonment; (3) Fine; (4) Removal from office; or (5) Disqualification to hold and enjoy any office of honor, trust or profit in this state."

The Act permits denial of an application where it is appropriate due to the nature of the victim's involvement in events leading to the crime. (§ 13964, subd. (b).) It specifically exempts from assistance any victim who "knowingly and willingly participated in the commission of the crime" or "failed to cooperate with a law enforcement agency in the apprehension and conviction of a criminal committing the crime." (§ 13964, subd. (c).)

Analysis of the Act indicates an application may be denied for the following reasons: no "crime" committed within the meaning of the Act, denial

appropriate due to victim's involvement in events leading to the crime, no pecuniary loss, no injury, participation by victim in the crime, or failure of victim to cooperate with law enforcement. Appellant suffered injury and pecuniary loss, cooperated fully with law enforcement agencies, and did not participate in the crime's commission. ■ Respondent Board contends, however, that no crime was committed within the meaning of the Act because no conviction was obtained, and that even if a crime *was* committed, denial was appropriate because of the nature of appellant's involvement in the events leading to the crime.

Respondent also contends that because no criminal complaint was filed by the district attorney, no crime was committed within the meaning of the Act. Section 13964, subdivision (d), which states, "No application shall be denied solely because no criminal complaint has been filed . . .," was added to the Act in 1983 and became effective after the Board and trial court decisions in the present case. Respondent maintains the section represents a change in the law; appellant contends it merely clarifies preexisting law.

■ Although generally a presumption exists that an amendment is made with intent to change the law, the presumption is rebutted where the practice of the relevant administrative body indicates that the amendment was merely a clarification. (*Marina Village* v. *California Coastal Zone Conservation Com.* (1976) 61 Cal.App.3d 388, 394 [132 Cal.Rptr. 120].) In the present case, a Board member admitted at appellant's hearing that a criminal complaint was not necessarily a prerequisite to the award of benefits by that agency.

■ Respondent's contention that a crime does not occur within the meaning of the Act or under Penal Code section 15 unless a conviction results cannot be sustained. Such a construction would deny compensation to victims in cases, for instance, where the criminal had fled, escaped or died prior to the formal institution of criminal charges, or where the charges were dismissed on purely procedural grounds unrelated to the merits of the offense. Penal Code section 15 merely describes the statutory conditions which must coexist before an act can be considered criminal. (See, e.g., *McComb* v. *Superior Court* (1977) 68 Cal.App.3d 89, 96-97 [137 Cal.Rptr. 233]; *People* v. *Crutcher* (1968) 262 Cal.App.2d 750, 754 [68 Cal.Rptr. 904].) The proper application of Penal Code section 15 is to determine whether an act was committed in violation of a law forbidding it, and whether punishment is annexed to that act if a conviction is obtained. Thus, we conclude that a crime may be committed within the meaning of the Act, regardless of whether criminal prosecution occurs.

The Board apparently labored under the false assumption that the district attorney's decision not to file a complaint was equivalent to an official determination that no crime occurred. ■ The decision to prosecute is with-

in the district attorney's discretion; he or she "must determine not only whether there has been a violation of law but also whether action is justified under all the facts . . . ." (*Wilson* v. *Sharp* (1954) 42 Cal.2d 675, 678-679 [268 P.2d 1062].) The absence of a criminal complaint is not substantial evidence that a crime did not occur.[2] Further, the decision must be that of the Board, not the district attorney.

 Finally, respondent contends it was justified in denying appellant's claim due to "the nature of the victim's involvement in the events leading to the crime . . . ." (§ 13964, subd. (b).) The message of this argument is thinly disguised: "she asked for it." While the district attorney may have been justified in believing that a jury would succumb to this sort of outmoded thinking, the courts of California will not be party to it. Percy P.'s past romantic or sexual involvement with appellant does not in any way legitimize an act of force and violence. Domestic violence is a crime in California, and includes the rape of a spouse (Pen. Code, §§ 273.5, 262). Denial of benefits based merely on appellant's "on-off relationship" with Percy P. was not appropriate, and does not make her a participant in the crime.

We note that appellant alleges, without contradiction, that she failed to appear at the original hearing because she was advised by a Program employee that her appearance was not necessary. The Program is designated by statute to assist victims in obtaining benefits under the Act. (Pen. Code, §§ 13835, 13835.2, subd. (a)(4).) Appellant was entitled to rely on that representation—a reliance which was reinforced by the fact she was receiving medical care from a therapist who had been given the same advice then, and reliably in the past. Given the nature of this particular case and our decision to reverse, it seems appropriate to provide a new hearing now that appellant has legal representation, so that all issues may be fully presented and resolved.

Accordingly, the judgment is reversed with instructions to issue the writ commanding the State Board of Control to grant appellant a new hearing in accordance with the views expressed in this opinion.

Low, P. J., and King, J., concurred.

---

[2]Many factors are considered in the decision whether to prosecute which are unrelated to the determination that a crime has been committed.