[Civ. No. 22569. Fourth Dist., Div. One. Dec. 17, 1980.]

KENNETH L. LIBERTY II, Plaintiff and Appellant, v.
CALIFORNIA COASTAL COMMISSION, Defendant and
Respondent.

COUNSEL

A. Lee Estep for Plaintiff and Appellant.

George Deukmejian, Attorney General, N. Gregory Taylor, Assistant Attorney General, and Anthony M. Summers, Deputy Attorney General, for Defendant and Respondent.

OPINION

COLOGNE, J.—Kenneth L. Liberty II appeals the judgment of the superior court denying his petition for a writ of mandate to review the administrative decision of the California Coastal Commission (State Commission) under Code of Civil Procedure section 1094.5.

In accordance with the procedure set out in Public Resources Code section 30000 et seq.[1] Liberty filed an application with the San Diego Coast Regional Commission (Regional Commission) seeking a permit

---

[1] All references are to the Public Resources Code unless otherwise specified; these sections are sometimes referred to in the opinion as the "Coastal Act" or the "Act."

to demolish an existing structure and erect a restaurant on Highway 101 in the community of Cardiff in San Diego County, in an area known as "Restaurant Row." The building would be next to the San Elijo Lagoon and across Old State Highway 101 from the ocean and near San Elijo State Beach. The restaurant building was to contain 5,432 square feet of floor space and accommodate 200 people. The lot plan provided 56 parking spaces. The Regional Commission voted to issue the permit subject to conditions, including providing public access to the lagoon behind, provision for one parking space for each 100 square feet of floor space, construction of proper drainage and certain other conditions, all of which were acceptable to Liberty.

Liberty's application and the conditions imposed by the Regional Commission conform to the recommendations of the San Dieguito Community Plan, a part of the San Diego County General Plan, but the decision was appealed by the Sierra Club. The California Coastal Commission (State Commission) was sufficiently concerned to receive the appeal and after public hearing it authorized the issuance of the permit, but on conditions different from those imposed by the Regional Commission.

The only significant conditions imposed by the State Commission which Liberty opposes deal with parking and read in pertinent part: "1. *Project Design.* Prior to commencement of construction, the applicant shall submit to the Executive Director of the Commission for his review and approval in writing revised plans providing:

"a. one parking space for every 50 sq. ft. of gross floor area.

". . . . . . . . . . . . . .

"2. *Parking.* Prior to commencement of construction, the applicant shall record a document, such as a deed restriction, obligating the applicant and any successor in interest to provide free public parking in the parking lot on the project parcel and not to limit the use of the lot to restaurant employees and/or customers until 5:00 p.m. daily. The document shall be recorded as a deed restriction to run with the land with no prior liens other than tax liens for a period extending 30 years from the date this permit is granted. Prior to recordation the document shall be submitted to the Executive Director for his approval in writing as to form and content. The applicant shall provide evidence of the recordation of the approved document to the Executive Director of the

Commission prior to commencement of any construction under this permit.

"Prior to occupation of the building the applicant shall submit to the Executive Director of the Commission for his review and approval a plan indicating the placement and wording of a sign notifying the public at large that the lot can be used for beach parking until 5:00 p.m. daily. The applicant shall provide evidence of the construction of the approved sign prior to occupation of the building, and the approved sign wording shall be retained for the life of the building."

Liberty petitioned the superior court for a writ of mandate holding the conditions imposed constituted an abuse of discretion. The trial court found under the state of the law the State Commission had a right to impose these conditions and denied the writ.

At the outset, we address the timeliness of the filing of the writ of mandate which the State Commission says furnishes an independent basis for affirming the judgment. The decision of the State Commission was filed on September 20, 1978, and under section 30801 a petition for writ of mandate must be filed within 60 days after the decision becomes final. The petition here was not filed until February 23, 1979. The trial court nevertheless found the petition was filed in a timely manner.

Section 30801 provides for judicial review pursuant to Code of Civil Procedure section 1094.5. ■ General rules applicable to time periods such as the 60-day petition filing requirement of section 30801 are as follows: "The law is settled, and clear, that the statutory periods within which mandamus petitions may be filed are *not* jurisdictional in nature, as are the periods within which appeals may be taken from lower courts [citation], but are mere statutes of limitation. [Citations.] Rules of law relating to limitations of actions are applicable to mandamus proceedings. [Citation.]

"Where delay in commencing action is induced by conduct of the defendant it cannot be availed of by him as a defense [citation], even though there was no designed fraud on the part of the person sought to be estopped." (*Ginns* v. *Savage* (1964) 61 Cal.2d 520, 524-525 [39 Cal.Rptr. 377, 393 P.2d 689]; see also Cal. Administrative Mandamus (Cont.Ed.Bar 1966) § 8.7, pp. 127-128.)

Where there is delay due to preparation of the administrative record after a timely request has been made for it, Government Code section 11523, part of the Administrative Procedure Act, furnishes a means for extending the prescribed time.[2] The Government Code section provides the agency shall prepare and deliver to the party requesting it a record of the proceedings within 30 days after the request and the party then has 30 days to file his petition in the superior court. A similar extension of time to file the petition is found in Code of Civil Procedure section 1094.6, subdivision (d), relating to judicial review of certain local agency decisions. In connection with the concept of equitable tolling of limitations periods, not strictly applicable to the facts here, it has been said: "The [tolling] rule...is a general equitable one which operates independently of the literal wording of the Code of Civil Procedure. As we observed ...: '[T]his court is not powerless to formulate rules of procedure where justice demands it. Indeed, it has shown itself ready to adapt rules of procedure to serve the ends of justice where technical forfeitures would unjustifiably prevent a trial on the merits.'" (*Addison v. State of California* (1978) 21 Cal.3d 313, 318-319 [146 Cal.Rptr. 224, 578 P.2d 941].)

Applying a similar rule of procedure to this proceeding in equity, and using Government Code section 11523 and Code of Civil Procedure section 1094.6, subdivision (d), as guides to an equitable extension where there is delay due to preparation of the administrative record after a timely request for it, we uphold the trial court's finding of a timely filing of the petition. There was a timely request for the administrative record here, but the record was not delivered by the State Commission

[2]Government Code section 11523 reads in part as follows: "Except as otherwise provided in this section any such petition shall be filed within 30 days after the last day on which reconsideration can be ordered. The right to petition shall not be affected by the failure to seek reconsideration before the agency. The complete record of the proceedings, or such parts thereof as are designated by the petitioner, shall be prepared by the agency and shall be delivered to petitioner, within 30 days after a request therefor by him, upon the payment of the fee specified in Section 69950 of the Government Code as now or hereinafter amended for the transcript, the cost of preparation of other portions of the record and for certification thereof.... *Where petitioner, within 10 days after the last day on which reconsideration can be ordered, requests the agency to prepare all or any part of the record the time within which a petition may be filed shall be extended until 30 days after its delivery to him.* The agency may file with the court the original of any document in the record in lieu of a copy thereof." (Italics added.)

Similarly, Code of Civil Procedure section 1094.6, subdivision (d), reads: "(d) If the petitioner files a request for the record as specified in subdivision (c) within 10 days after the date the decision becomes final as provided in subdivision (b), the time within which a petition pursuant to Section 1094.5 may be filed shall be extended to not later than the 30th day following the date on which the record is either personally delivered or mailed to the petitioner or his attorney of record, if he has one."

to Liberty until January 25, 1979. Liberty's petition was filed within 30 days of that date (i.e., on Feb. 23, 1979). We hold the filing of the petition was timely. To decide otherwise would permit the State Commission to effectively block any appeal by simply holding up preparation of the record and thus facilitate the perpetration of an injustice by thwarting a judicial review. Usually the details of that record are essential to preparation of the petition and the aggrieved party cannot make out his case without it (see Cal. Administrative Mandamus, *supra*, and Mar. 1979 Supp., § 9.5, pp. 136-138, and Supp. pp. 101-103, and § 13.21, pp. 231-232 and Supp. pp. 133-134). There was no error in holding the petition was timely filed.

Liberty contends the State Commission in imposing both conditions has taken his property without just compensation. ■ Preliminarily, we note the role of the State Commission in protecting the coastal zone is now well established (see *State of California* v. *Superior Court (Veta)* (1974) 12 Cal.3d 237, 252-253 [115 Cal.Rptr. 497, 524 P.2d 1281]). The need for preserving a degree of liberty in the land-use planning function, and the inhibiting financial force which inheres in the inverse condemnation remedy, in combination result in the conclusion that on a balance a mandamus or declaratory relief remedy, rather than inverse condemnation, is the appropriate relief under the circumstances (*Agins* v. *City of Tiburon* (1979) 24 Cal.3d 266, 276-277 [157 Cal.Rptr. 372, 598 P.2d 25]). The propriety of the imposition of the conditions of the State Commission is properly tested by a writ proceeding and not inverse condemnation (see *Frisco Land & Mining Co.* v. *State of California* (1977) 74 Cal.App.3d 736, 753-754 [141 Cal.Rptr. 820]).

■ Liberty argues he has been denied equal protection and substantive due process in that the condition of requiring 1 parking space for every 50 square feet of building floor space has not been imposed on any other restaurant in this area and was arbitrarily applied to him.

The State Commission can impose reasonable terms and conditions in order to ensure a development will be in accordance with the provisions of the law (§ 30607) and parking for the area is a matter of proper concern (see §§ 30212.5 and 30252).[3] Liberty concedes there is a serious

---

[3]Sections 30607, 30212.5 and 30252 read: 30607. "Any permit that is issued or any development or action approved on appeal, pursuant to this chapter, shall be subject to reasonable terms and conditions in order to ensure that such development or action will be in accordance with the provisions of this division."

parking problem in the area and the record reveals the parking require-ments imposed on the other restaurants in this area have been inadequate. The solution of this problem is a proper concern of the State Commission and we know of no authority which requires it to pursue a course shown to be inadequate, thus compounding an existing condition. The power granted under the Act is not confined to the nar-row circumspection of precedents, resting on past conditions which do not cover and control present day conditions obviously calling for re-vised regulations to promote the health, safety, morals or general welfare of the public (*Candlestick Properties, Inc.* v. *San Francisco Bay Conservation etc. Com.* (1970) 11 Cal.App.3d 557, 571 [89 Cal.Rptr. 897]). The imposition of parking regulations to provide ade-quate parking for the customers using the restaurant which the petitioner proposes to build is within the power of the State Commission and the fixing of the amount of space so required is a legislative, not a judicial, function and is to be tested solely by answering the question: is there any reasonable basis to support the legislative determination of the regulation's wisdom and necessity? (See *Consolidated Rock Pro-ducts Co.* v. *City of Los Angeles* (1962) 57 Cal.2d 515, 522 [20 Cal.Rptr. 638, 370 P.2d 342]; and see *Candlestick Properties, Inc.* v. *San Francisco Bay Conservation etc. Com., supra,* 11 Cal.App.3d 557, at p. 571.) Our answer must be in the affirmative.

The record adequately reflects the need for more parking in this area and the fact the other restaurants have not satisfied the need for park-ing with the amount of parking area required of them supports the reasonableness of the Commission's requirement of additional parking. The increased parking required is reasonable and does not contravene principles of due process or equal protection.

---

30212.5. "Wherever appropriate and feasible, public facilities, including parking areas or facilities, shall be distributed throughout an area so as to mitigate against the impacts, social and otherwise, of overcrowding or overuse by the public of any single area."

30252. "The location and amount of new development should maintain and enhance public access to the coast by (1) facilitating the provision or extension of transit ser-vice, (2) providing commercial facilities within or adjoining residential development or in other areas that will minimize the use of coastal access roads, (3) providing nonauto-mobile circulation within the development, (4) providing adequate parking facilities or providing substitute means of serving the development with public transportation, (5) assuring the potential for public transit for high intensity uses such as high-rise office buildings, and by (6) assuring that the recreational needs of new residents will not overload nearby coastal recreation areas by correlating the amount of development with local park acquisition and development plans with the provision of onsite recre-ational facilities to serve the new development."

■ We turn now to the requirement the petitioner provide free public parking until 5 p.m. every day for the next 30 years.

Sections 30534 and 30212 make it clear the State Commission may require the dedication of property for access to or along the coast, and we are not called upon to consider the propriety of that condition in the subject permit since Liberty has agreed to it.[4] By contrast, requiring a landowner to provide access to the beach and lagoon areas over a route to which the public may have acquired a prescriptive easement (see § 30211)[5] differs substantially from requiring the landowner to dedicate land for free public parking to which the public has no apparent right. The design, improvement and survey data required of subdivisions is a proper function of the political subdivision charged with policing the development. Dedication of land for streets to provide reasonable traffic flow for the safety and general welfare of the lot owners and general public is not a taking under the power of eminent domain because it is reasonably related to the increased traffic and other needs of the proposed subdivision (see *Ayres* v. *City Council of Los Angeles* (1949) 34 Cal.2d 31, 42 [207 P.2d 1]).

In *Associated Home Builders etc., Inc.* v. *City of Walnut Creek* (1971) 4 Cal.3d 633, 638 [94 Cal.Rptr. 630, 484 P.2d 606, 43 A.L.R.3d 847], the court held a subdivider could be required to provide recreational facilities as a condition of receiving authority to proceed with his subdivision. In this case, the court was guided by direct and detailed statutory authority expressly permitting the political subdivision to require dedication of land or the payment of fees for such facilities, and held such a dedication requirement may be upheld even though the

---

[4]Section 30534, effective January 1, 1980 (Stats. 1979, ch. 840), reads: "The commission shall, within 10 days after receiving evidence of recordation of any offer to dedicate real property for access to or along the coast, which dedication was required as a condition to the issuance of a coastal development permit, forward a copy of such evidence and a description of such real property to the Department of Parks and Recreation, the State Coastal Conservancy, and the State Lands Commission."

Section 30212 provides in part: "(a) Public access from the nearest public roadway to the shoreline and along the coast shall be provided in new development projects except where (1) it is inconsistent with public safety, military security needs, or the protection of fragile coastal resources, (2) adequate access exists nearby, or (3) agriculture would be adversely affected. Dedicated accessway shall not be required to be opened to public use until a public agency or private association agrees to accept responsibility for maintenance and liability of the accessway."

[5]Section 30211 reads, in part: "Development shall not interfere with the public's right of access to the sea where acquired through use . . . ."

subdivision does not alone create the need for the dedication. That authority (former Bus. & Prof. Code, § 11546,[6] now Gov. Code, §§ 66477, 66479), however, does provide that the amount and location of land to be dedicated or the fees to be paid shall bear a reasonable relationship to the use of the park and recreational facilities by the future inhabitants of the subdivision. In the opinion, the court construes the limitations imposed by the statute, holding that while the facilities need not solely benefit the subdivision, they must serve the subdivision directly or indirectly.[7]

While rejecting a contention the required facilities must be "specifically and uniquely attributable" to the subdivider's activities, the court establishes it is the influx of residents into a new subdivision which in-

---

[6]Government Code section 66477 provides, in part: "The legislative body of a city or county may, by ordinance, require the dedication of land, the payment of fees in lieu thereof, or a combination of both, for park or recreational purposes as a condition to the approval of a final subdivision map, provided that:

"(a) The ordinance has been in effect for a period of 30 days prior to the filing of the tentative map of the subdivision or parcel map. [¶] (b) The ordinance includes definite standards for determining the proportion of a subdivision to be dedicated and the amount of any fee to be paid in lieu thereof. [¶] (c) The land, fees, or combination thereof are to be used only for the purpose of providing park or recreational facilities to serve the subdivision. [¶] (d) The legislative body has adopted a general plan containing a recreational element, and the park and recreational facilities are in accordance with definite principles and standards contained therein. [¶] (e) The amount and location of land to be dedicated or the fees to be paid shall bear a reasonable relationship to the use of the park and recreational facilities by the future inhabitants of the subdivision."

[7]In *Associated Home Builders etc., Inc.* v. *City of Walnut Creek, supra,* 4 Cal.3d 633, at page 640, footnote 6, the court states: "[W]e need not decide in the present case whether a subdivider may be compelled to make a contribution to a park which is, for example, not conveniently located to the subdivision. Parenthetically, however, we perceive merit in the position of amicus curiae. It is difficult to see why, in the light of the need for recreational facilities described above and the increasing mobility of our population, a subdivider's fee in lieu of dedication may not be used to purchase or develop land some distance from the subdivision but which would also be available for use by subdivision residents. If, for example, the governing body of a city has determined as has the city in the present case, that a specific amount of park land is required for a stated number of inhabitants, if this determination is reasonable, and there is a park already developed close to the subdivision to meet the needs of its residents, it seems reasonable to employ the fee to purchase land in another area of the city for park purposes to maintain the proper balance between the number of persons in the community and the amount of park land available. The subdivider who deliberately or fortuitously develops land close to an already completed park diminishes the supply of open land and adds residents who require park space within the city as a whole. A similar rationale was employed in *Southern Pac. Co.* v. *City of Los Angeles* (1966) 242 Cal.App.2d

creases the need for park and recreational facilities throughout the community and the new subdivision thereby benefits indirectly within the framework of the entity's overall objective to provide these facilities.

The instant case differs from that found in *Associated Home Builders etc., Inc., supra*, however, since the State Commission is not given specific authority to require dedication for public parking. The only authority the Coastal Act gives the State Commission in this regard is for providing access consistent with needs for public safety and for the protection of public rights, of private property owner rights and of natural resource areas from overuse (§ 30210).[8] The authority of the State Commission to require such a dedication must rest, if at all, on the general police powers of the public entity to protect public access (§ 30210 et seq.), recreation (§ 30220 et seq.), marine environment (§ 30230 et seq.), land resources (§ 30240 et seq.), development (§ 30250 et seq.), and industrial development (§ 30260 et seq.). These are the stated purposes of the Act.

To provide parking for the use to be made of the land involved is one thing which, as we have noted above, is totally proper. To require a landowner to dedicate property for free public parking far beyond his own land use requirements is a totally different matter.

Whether there has been a reasonable exercise of the police power is a question for the court (*State Board* v. *Thrift-D-Lux Cleaners, Inc.* (1953) 40 Cal.2d 436, 440 [254 P.2d 29]). Where the conditions imposed are not related to the use being made of the property but are imposed because the entity conceives a means of shifting the burden of providing the cost of a public benefit to another not responsible for or only remotely or speculatively benefiting from it, there is an unreasonable exercise of the police power (see *Mid-Way Cabinet etc. Mfg.* v. *County of San Joaquin* (1967) 257 Cal.App.2d 181, 191-192 [65 Cal. Rptr. 37]). In *Mid-Way*, the court stated at page 192: "Various factors

38 . . . , to uphold an ordinance requiring dedication of property for street widening as a condition of obtaining a building permit."

The court finds a reasonable relationship between the needs of the property seeking the permit and the condition imposed.

[8]Section 30210 provides: "In carrying out the requirement of Section 4 of Article X of the California Constitution, maximum access, which shall be conspicuously posted, and recreational opportunities shall be provided for all the people consistent with public safety needs and the need to protect public rights, rights of private property owners, and natural resource areas from overuse."

are taken into consideration by courts in determining whether in a given situation there is a proper exercise of the police power, in which case, as shown above, the landowner must yield 'uncompensated obedience' (*Gray* v. *Reclamation Dist. No. 1500,* 174 Cal. 622, 642 . . .), or whether a governmental exercise of the power of eminent domain is masquerading in the guise of the police power. The determining factor, as we have seen, is *fairness.*"

While the police power permits reasonable conditions upon the landowner's proposal, not all conditions are valid. A grant of public privilege may not be conditioned upon the deprivation of constitutional protection (*Bagley* v. *Washington Township Hospital Dist.* (1966) 65 Cal.2d 499, 504-505 [55 Cal.Rptr. 401, 421 P.2d 409]). In discussing the constitutional protection against an uncompensated taking of property, it has been said the police power "cannot extend beyond the necessities of the case and be made a cloak to destroy constitutional rights as to the inviolateness of private property" (*House* v. *L. A. County Flood Control Dist.* (1944) 25 Cal.2d 384, 388-389 [153 P.2d 950]). An arbitrarily conceived exaction will be nullified as a disguised attempt to take private property for public use without resort to eminent domain or as a mask for discriminatory taxation (*Scrutton* v. *County of Sacramento* (1969) 275 Cal.App.2d 412, 421 [79 Cal.Rptr. 872]). As refined in *Scrutton* at page 421, the conditions imposed on the grant of land use applications are valid if reasonably conceived to fulfill public needs emanating from the landowner's proposed use. We perceive this same concept to be a prime motivation for the Legislature's adoption of such provisions as Government Code section 66477, subdivision (e), as noted above, and section 30010, which reads: "The Legislature hereby finds and declares that this division is not intended, and shall not be construed as authorizing the regional commission, the commission, port governing body, or local government acting pursuant to this division to exercise their power to grant or deny a permit in a manner which will take or damage private property for public use, without the payment of just compensation therefor. This section is not intended to increase or decrease the rights of any owner of property under the Constitution of the State of California or the United States."

Here, the business sought to be developed and to serve this recreational area is likely to increase vehicular traffic. Meeting the need for adequate parking to accommodate that increase is, of course, appropriate. The condition imposed by the Commission requiring 1 space for every 50 square feet of building floor space provides ample parking for

the use intended. To go beyond that and require the property owner to provide free parking for the public intending to use the beach and other privately owned restaurants in the area for which ample parking has not been provided is unfair. The State Commission is here attempting to disguise under the police power its actual exercise of the power of eminent domain. That it cannot do.

Offstreet parking for the public in a recreational area such as this is a legitimate concern of government. Here, we see this as a proper undertaking by eminent domain either by the state in connection with its nearby state park, by the County of San Diego which bears responsibility for traffic in the area, or by formation of a special assessment district (see *City of Whittier* v. *Dixon* (1944) 24 Cal.2d 664, 667-668 [151 P.2d 5, 153 A.L.R. 956]; and see, generally, Sts. & Hy. Code, § 31500 et seq., div. 18, pts. 1, 2 and 3). But to impose the burden on one property owner to an extent beyond his own use shifts the government's burden unfairly to a private party (see *Clement* v. *State Reclamation Board* (1950) 35 Cal.2d 628, 642 [220 P.2d 897]).[9]

The condition imposed by the State Commission that Liberty provide free parking to the public until 5 p.m. daily is unreasonable and unfair.

Judgment reversed with directions to the trial court to issue a peremptory writ in accordance with the views expressed in this opinion.

Brown (Gerald), P. J., and Work, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied March 19, 1981. Caldecott, J.,* participated therein. Bird, C. J., and Tobriner, J., were of the opinion that the petition should be granted.

---

[9]See also *Kelber* v. *City of Upland* (1957) 155 Cal.App.2d 631, 638 [318 P.2d 561], where fees imposed for subdivision approval were used to benefit the city's general fund and were struck down as being unrelated to the purposes of the Subdivision Map Act.

*Assigned by the Chairperson of the Judicial Council.