[No. B004110. Second Dist., Div. Six. Jan. 14, 1985.]

ALVIN J. REMMENGA et al., Plaintiffs and Appellants, v.
CALIFORNIA COASTAL COMMISSION, Defendant and Respondent.

COUNSEL

Fadem, Berger & Norton and Michael M. Berger for Plaintiffs and Appellants.

John K. Van de Kamp, Attorney General, N. Gregory Taylor and Peter H. Kaufman, Deputy Attorneys General, for Defendant and Respondent.

OPINION

WILLARD, J.*—This case raises questions concerning the constitutionality of sections 30610.3 and 30610.8 of the Public Resources Code. Appellants sought a writ of mandate from the trial court to compel the California Coastal Commission to issue a development permit without payment of the $5,000 fee required by section 30610.8. They appeal from the trial court's denial of their petition. We find the statutes compatible with the state and federal Constitutions and affirm.

### FACTS

The Hollister Ranch subdivision comprises approximately 14,000 acres of land in Santa Barbara County, fronting on the Pacific Ocean for about

---

*Assigned by the Chairperson of the Judicial Council.

8½ miles. It contains 135 lots, averaging more than 100 acres each in size. Within the subdivision there are no public roads and public access to the area from public roads is barred by armed guards. Visits to the adjoining beach by the general public have been limited to persons arriving by boat or walking below the high tide line from Gaviota State Beach at the relatively few times of the year when tides permit.

Petitioners acquired their 106-acre lot in 1977. It is located more than a mile from the coast. Each lot owner has a nonexclusive easement to use the ranch common areas, which include the private roads leading to the coast. These common areas remain in the ownership of the subdivider, but will revert to a homeowners' association when all of the lots are sold.

In 1978 petitioners filed an application with the commission for permission to construct a single family residence. Permission was granted subject to a condition that public access to the coast be provided. The Los Angeles County Superior Court issued a writ of mandate requiring the commission to set aside the decision and reconsider its action. At this point the Legislature adopted an urgency measure, effective February 17, 1982, adding section 30610.8 to the Public Resources Code. It reads in part as follows: "(a) The Legislature hereby finds and declares that a dispute exists at the Hollister Ranch in Santa Barbara County with respect to the implementation of public access policies of this division and that it is in the interest of the state and the property owners at the Hollister Ranch to resolve this dispute in an expeditious manner. The Legislature further finds and declares that public access should be provided in a timely manner and that in order to achieve this goal, while permitting property owners to commence construction, the provisions of this section are necessary to promote the public's welfare. (b) For purposes of Section 30610.3[1] and with respect to the Hollister Ranch public access program, the in-lieu fee shall be five thousand dollars ($5,000) for each permit. Upon payment by the applicant for a coastal development permit of this in-lieu fee to the State Coastal Conservancy for use in implementing the public access program, the applicant may immediately commence construction if the other conditions of the coastal development permit, if any, have been met. No condition may be added to a coastal development permit that was issued prior to the effective date of this section for any development at the Hollister Ranch."

---

[1]Section 30610.3 provides for fees in lieu of dedication of right of way to the beach. The fees are based upon a fair share of the estimated cost of acquiring the right of way, determined by independent appraisers.

DISCUSSION

I

One issue for decision is whether this statute, as applied to appellants, exacts an unconstitutional condition for receipt of a permit—the payment of money in lieu of dedication of a right of way to the coast. Petitioners contend that it does because it requires payment of money in lieu of dedication of private property without payment of just compensation. Respondent replies that the Legislature had a rational and valid basis for requiring payment of the fee to secure a development permit.

█ If as a condition to receipt of a permit, the applicant must donate property for a public use that bears no relationship to the benefit conferred on the applicant or the burden imposed on the public, there is a taking of property without payment of just compensation in violation of the United States Constitution. (*Loretto* v. *Teleprompter Manhattan CATV Corp.* (1982) 458 U.S. 419 [73 L.Ed.2d 868, 102 S.Ct. 3164].) This is the basis for California court decisions invalidating such conditions, e.g., *Scrutton* v. *County of Sacramento* (1969) 275 Cal.App.2d 412 [79 Cal.Rptr. 872]; *Liberty* v. *California Coastal Com.* (1980) 113 Cal.App.3d 491 [170 Cal.Rptr. 247]. *Scrutton* held invalid a requirement for dedication and improvement of public streets as a condition for rezoning from agricultural to multifamily dwelling use. *Liberty* disapproved a requirement by the Coastal Commission, that as a condition for receipt of a permit to construct a restaurant, the developer must permit the restaurant parking lot to be used by the general public until 5 p.m. for a period of 30 years.

Conversely, if there is such a rational relationship, the requirement of dedication of property or payment of money in lieu thereof is a validly imposed condition. *Ayres* v. *City Council of Los Angeles* (1949) 34 Cal.2d 31 [207 P.2d 1, 11 A.L.R.2d 503]; *Associated Homebuilders, etc., Inc.* v. *Walnut Creek* (1971) 4 Cal.3d 633 [94 Cal.Rptr. 630, 484 P.2d 606, 43 A.L.R.3d 847]. In *Ayres* the court upheld a requirement by the City of Los Angeles for dedication by the subdivider of a 10-foot wide strip along the proposed subdivision for the purpose of widening the adjoining street as a condition for the receipt of subdivision map approval. The subdivision would increase traffic on the street and widening would benefit not only the general public, but also the subdivision lot owners.

*Walnut Creek, supra,* involved a requirement for dedication of land or, in lieu thereof, the payment of money, for development of a park for recreational purposes, as a condition for approval of a subdivision map. This

was found to be permitted constitutionally. The subdivision would increase the need for parks.

The parties to this litigation have no quarrel with the general rules stated above. Their disagreement is whether on the facts here presented there is a sufficient nexus or relationship between the improvement for which a permit is sought and the condition imposed.[2]

It is firmly established that the justification for required dedication is not limited to the needs of or burdens created by the project. (*Ayres v. City Council of Los Angeles, supra,* 34 Cal.2d 31; *Associated Home Builders, etc., Inc.* v. *Walnut Creek, supra,* 4 Cal.3d 633.) "We see no persuasive reason in the face of these urgent needs caused by present and anticipated future population growth on the one hand and the disappearance of open land on the other to hold that a statute requiring the dedication of land by a subdivider may be justified only upon the ground that the particular subdivider upon whom an exaction has been imposed will, solely by the development of his subdivision, increase the need for recreational facilities to such an extent that additional land for such facilities will be required." (*Associated Homebuilders, etc. Inc.* v. *Walnut Creek, supra,* at pp. 639-640.) In that case, the court found that a constitutionally sufficient nexus or relationship between a project and a dedication requirement had been established on the basis of a "general public need for recreational facilities caused by present and future subdivisions." (*Ibid.* at p. 638.) It follows that even if an individual project does not create an immediate need for a compensating accessway, one may be required of it if its effect together with the cumulative impact of similar projects would in the future create or increase the need for a system of such compensating accessways.

Viewing the problem as a whole, it appears that the requirement to pay an in lieu fee of $5,000 for development of one lot presents essentially the same constitutional issue as would be presented by a requirement that the owner of unimproved property adjoining tidelands dedicate a public right of way in order to obtain a development permit. As to whether this is constitutionally permitted is the basic issue in this case.

Relying upon *Associated Home Builders,* the court in *Georgia-Pacific Corp.* v. *California Coastal Com.* (1982) 132 Cal.App.3d 678, 699 [183 Cal.Rptr. 395], in dealing with the public access requirements of section

---

[2]In approaching this issue it must be kept in mind that the determination does not depend upon findings of the Coastal Commission or evidence presented at the hearings before the commission or at the superior court trial. The California Legislature found that the $5,000 fee requirement was necessary to promote the public welfare. It is this finding that presents the issue.

30212[3] of the act, specifically stated that: "A regulatory body may constitutionally require a dedication of property in the interests of the general welfare as a condition of permitting land development. It does not act in eminent domain when it does this, and the validity of a dedication requirement is not dependent on a factual showing that the development has created the need for it. (Citations.) The 'scope and extent' of the easements required by the Commission were 'reasonably related' to one of the principal objectives of the Coastal Act, which is to provide for maximum access to the coast by all the people in this State. (See § 30001.5, subd. (c).) Their relationship to the 'nature and impact' of the proposed projects was not a valid basis for the trial court's determination that the access conditions deprived Georgia-Pacific of its constitutional rights."

■ In reviewing the action of the Legislature, we are bound by the rule stated in *Candlestick Properties, Inc.* v. *San Francisco Bay Conservation, etc., Com.* (1970) 11 Cal.App.3d 557, 571 [89 Cal.Rptr. 897]; "It is a well settled rule that determination of the necessity and form of regulations enacted pursuant to the police power 'is primarily a legislative and not a judicial function, and is to be tested in the courts not by what the judges individually or collectively may think of the wisdom or necessity of a particular regulation, but solely by the answer to the question is there any reasonable basis in fact to support the legislative determination of the regulation's wisdom and necessity?' (*Consolidated Rock Products Co.* v. *City of Los Angeles,* 57 Cal.2d 515, 522 [20 Cal.Rptr. 638, 370 P.2d 342].) Furthermore, even if the reasonableness of the regulation is fairly debatable, the legislative determination will not be disturbed. (*Hamer* v. *Town of Ross* 59 Cal.2d 776, 783 [31 Cal.Rptr. 335, 382 P.2d 375], and cases cited therein.)" (See also *People* v. *Aguiar* (1968) 257 Cal.App.2d 597, 603 [65 Cal.Rptr. 171].) This rule follows the reasoning of a line of cases emanating from the United States Supreme Court decisions in *Williamson* v. *Lee Optical Co.* (1955) 348 U.S. 483, 488 [99 L.Ed. 563, 572, 75 S.Ct. 461], and *Ferguson* v. *Skrupa* (1963) 372 U.S. 726 [10 L.Ed.2d 93, 83 S.Ct. 1028, 95 A.L.R.2d 1347]. In *Ferguson* the court said that under the due process clause: "We have returned to the original constitutional proposition that courts do not substitute their social and economic beliefs for the judgment of legislative bodies, who are elected to pass laws." (*Ferguson* v. *Skrupa, supra,* 372 U.S. 726, 730 [10 L.Ed.2d 93, 97].) Judicial examination of the basis upon which the Legislature may rationally have concluded a threat to the public interest existed is complete when any fact or set of facts appear or may be hypothesized to support this legislative conclusion. (*Rees* v. *Department of Real Estate, supra,* 76 Cal.App.3d 286, 300; *Varanelli* v. *Struc-*

---

[3]Requiring dedication of public access as a condition of approval of new development projects.

*tural Pest Control Board* (1969) 1 Cal.App.3d 217, 220 [81 Cal.Rptr. 492]; *Doyle* v. *Board of Barber Examiners* (1963) 219 Cal.App.2d 504 [33 Cal.Rptr. 349].)

█ In the present case, the Legislature had ample basis upon which to conclude that construction of the proposed improvement between the first public road and the coast, in combination with improvement of other lots in that area, would have a cumulative adverse impact on the public's constitutional right of access. Government studies have demonstrated that hundreds of miles of publicly owned tidelands have been walled off from public access by private development. *Comprehensive Ocean Area Plan and Supplement* (1971); California Department of Fish and Game, *Fish and Wildlife in the Marine and Coastal Zone* (1971); California Department of Conservation, Division of Mines and Geology, *Non-Living Resources of the Coastal Zone* (1971); California Department of Parks and Recreation, *California Coastline Preservation and Recreation Plan* (1971); *CEEED* v. *California Coastal Zone Conservation Com.* (1974) 43 Cal.App.3d 306, 321-322 [118 Cal.Rptr. 315].

The importance of public access is recognized in the California Constitution, article X, section 4, which states: "No individual, partnership, or corporation, claiming or possessing the frontage or tidal lands of a harbor, bay, inlet, estuary, or other navigable water in this State, shall be permitted to exclude the right of way to such water whenever it is required for any public purpose, nor to destroy or obstruct the free navigation of such water; and the Legislature shall enact such laws as will give the most liberal construction to this provision, so that access to the navigable waters of this State shall be always attainable for the people thereof."

Petitioner's proposed improvement may constitute only a small impediment to public access, but when viewed as a part of the entire subdivision as it develops in the future the proposed improvement may well be a link in a chain barring access or making access more difficult and costly.

If the Hollister Ranch had not previously been subdivided and were now applying for subdivision approval, public access to the shore could constitutionally have been required. (*Georgia-Pacific Corp.* v. *California Coastal Com.* (1982) 132 Cal.App.3d 678 [183 Cal.Rptr. 395]; see *Frisco Land & Mining Co.* v. *State of California* (1977) 74 Cal.App.3d 736, 753, 754 [141 Cal.Rptr. 820].) The fact that the ownership has been divided into 135 lots should not foreclose the access requirement as a condition of development. Each lot owner may be required, not to provide total access, but to participate in providing it. This is the plan devised and mandated by the Legislature.

## II

■ A second issue for decision is whether the imposition of in-lieu fees by section 30610.8 is a denial of the equal protection of the laws as guaranteed by state and federal Constitutions. Appellants argue that such a denial occurs because section 30610.6 authorizes purchase of public access rights at Sea Ranch, a subdivision in Sonoma County.

In determining whether land use regulations comply with the equal protection clause the test is whether there is a rational classification. (*Norsco Enterprises* v. *City of Fremont* (1976) 54 Cal.App.3d 488 [126 Cal.Rptr. 659].) A careful review of the background and statute indicates that section 30610.6 was basically designed to settle claims. As stated in appellant's closing brief, "[T]he Sea Ranch litigation had already raged like wildfire across every possible court, . . ."[4] Both Sea Ranch and Hollister Ranch owners were obligated to provide public access to the shore in mitigation of the ultimate impacts of their development proposals. The difference in treatment by the Legislature results from the difference in action by the owners. In the case of Sea Ranch, the landowners association agreed to settle all its disputes with the state, including a dispute over the return of environmental deposits which had previously been paid, (see § 30610.6, subd. (a)(4)), and to provide access to the public. In turn, the state, realizing that it would save millions of dollars in court costs and administrative time by not further litigating the issues on a permit by permit basis, and that it would actually realize public access to the sea far sooner with this settlement, agreed to settle all disputes with Sea Ranch by payment to them of $500,000 and receipt of all access easements and deed restrictions.

In contrast no agreement has been reached between the Hollister Ranch Association and the state settling the public access problem. The Legislature, in enacting section 30610.6, subdivision (m), specifically found that: "[T]hat the *provisions for the settlement of this dispute,* especially with respect to public access, as set forth in this section provide an alternative *to and are equivalent to the provisions set forth in Section 30610.3.* The Legislature further finds that the provisions of this section are not in lieu of the permit and planning requirements of this division but rather provide for an alternative mechanism to Section 30610.3 for the resolution of outstand-

---

[4] *Sea Ranch Assn.* v. *Cal. Coastal Com.* (N.D.Cal. 1975) 396 F.Supp. 533; remanded (9th Cir. 1976) 537 F.2d 1058; redecided (N.D.Cal. 1981) 527 F.Supp. 390; vacated (1981) 454 U.S. 1070 [70 L.Ed.2d 606, 102 S.Ct. 622]; *Oceanic Cal., Inc.* v. *North Central Coast Reg. Com.* (1976) 63 Cal.App.3d 57 [133 Cal.Rptr. 664], certiorari denied (1977) 431 U.S. 951 [53 L.Ed.2d 267, 97 S.Ct. 2668].

ing issues at the Sea Ranch." (Italics added.) It also made the findings set forth in the footnote below.[5]

In short, section 30610.6 was an elaboration of section 30610.3. As does section 30610.3, it provided for a comprehensive system of lateral and vertical accessways to and along the shore, returned monies previously paid by ranch owners and provided a means of obtaining access immediately, instead of on a piece-meal basis. The Legislature does not run afoul of the equal protection clause when faced with two parties challenging the same requirements, it agrees to settle the litigation with one party and continues the litigate with another who has refused to agree to the same or a similar compromise.

The decision below is affirmed.

Stone, P. J., and Abbe, J., concurred.

A petition for a rehearing was denied February 13, 1985, and appellants' petition for a hearing by the Supreme Court was denied April 25, 1985. Mosk, J., and Lucas, J., were of the opinion that the petition should be granted.

---

[5]"(a) The Legislature hereby finds and declares that it is in the public interest to provide by statute for the resolution of the lengthy and bitter dispute involving development of existing legal lots within the unincorporated area of Sonoma County, commonly known as Sea Ranch. The reasons for the need to finally resolve this dispute include:

"(1) Acknowledgement by the responsible regulatory agencies that development of existing lots at Sea Ranch can proceed consistent with the provisions of this division and other applicable laws provided certain conditions have been met. Development has been prevented at considerable costs to property owners because these conditions have not been met.

"(2) That it has been, and continues to be costly to Sea Ranch property owners and the public because of, among other reasons, extensive and protracted litigation, continuing administrative proceedings, and escalating construction costs.

"(3) The need to provide additional public access to and along portions of the coast at the Sea Ranch in order to meet the requirements of this division. The continuation of this dispute prevents the public from enjoying the use of such access opportunities.

"(4) The commission is unable to refund 118 'environmental deposits' to property owners because coastal development permit conditions have not been met.

"(5) It appears likely that this lengthy dispute will continue unless the Legislature provides a solution, and the failure to resolve the dispute will be unfair to property owners and the public.

"(b) The Legislature further finds and declares that because of the unique circumstances of this situation, the provisions of this section constitute the most expeditious and equitable mechanism to ensure a timely solution that is in the best interest of property owners and that it is consistent with the requirements of this division."