[No. F011088. Fifth Dist. Oct. 26, 1989.]

ROBERT ROHN et al., Plaintiffs and Respondents, v.
CITY OF VISALIA, Defendant and Appellant.

**Counsel**

McCormick, Kabot & Michner and S. L. Kabot for Defendant and Appellant.

Crowe, Williams & Jordan and Steven R. Williams for Plaintiffs and Respondents.

**Opinion**

## Introduction

**BAXTER, J.—** ▮ We are called upon to determine whether the City of Visalia may condition approval of a site plan review and issuance of a building permit on dedication of 14 percent of respondents' land to correct the alignment of Court Street at its intersection with Tulare Avenue consistent with its general plan. Since there is no reasonable relationship between the dedication condition and the converted use of the property, we affirm the trial court's judgment deleting the condition.

## Facts and Proceedings Below

Court Street runs north and south and intersects Tulare Avenue, which runs east and west. The intersection is within the city limits of Visalia. The portion of Court Street south of Tulare Avenue is skewed to the east; it does

not line up perfectly with the continuation of Court Street as it crosses Tulare to the north. It appears that this imperfect intersection came into existence during the original planning development of the area.

In 1978, the city amended its general plan and approved the transition of Court Street and Locust Street to a common two-way major arterial and the eventual connection of Court and Locust north of Tulare Avenue. The decision was not made based on the projected future use of the adjacent parcels, but because of the general need "to plan for the future growth needs of the City of Visalia." The proposal also included a plan to correct the imperfect alignment of Court Street at its intersection with Tulare Avenue by curving Court slightly to the west to match the northern corners. The city has not begun work on either the connection or the realignment.

Respondents own real property at the southwest corner of Court Street and Tulare Avenue. A single family residence was on the property and it was zoned for either single or multifamily residences. On May 14, 1985, respondents applied to the city for an amendment to the general plan to change the land use designation from residential to professional administrative offices. The owners intended to convert the house to an office building.

On July 22, 1985, the planning division prepared a report for the Visalia Planning Commission discussing the impact of the conversion. It compared the potential traffic that would be generated by apartments, which could be built without an amendment or zoning change, and by the proposed office building. Two other sites adjoining the property were also considered as potential office buildings. The planning staff determined that the conversion of the three parcels to professional offices would appear "to generate less traffic impact than their development to existing multiple family zoning potential." The report also noted that the proposed Court Street realignment "will necessitate the dedication of additional right-of-way along the northeast corner of the subject property. However, staff does not feel that this will create a constraint on the future conversion of the existing structure." There was no indication that the dedication was required because of increased traffic from the conversion, when the dedication would be demanded, or the exact amount of property that would be required for the dedication.

On July 22, 1985, the planning commission held a hearing on the proposed amendment to the general plan. During the discussion about the property, the proposed realignment of Tulare and Court was discussed. Two residents stated their concerns about traffic in the area. However, there was no mention of dedication of property as a condition of obtaining the amendment or rezoning the property. The matter was continued for further

discussion on rezoning the two parcels discussed in the planning staff report, which are adjacent to respondents' property.

On August 12, 1985, the planning commission held another hearing on the proposed amendment, which was recommended by the planning staff. A member of the planning staff stated that professional offices would not create any greater traffic than multifamily developments for which the site was already zoned. A city engineer "explained the plan and proposed alignment for Court Street. He stated that at this point in time there is not a committed time frame when this will occur." While the Court Street plan was explained, there was no mention that the owner would have to dedicate any portion of the property for the realignment. A motion approving the amendment to the general plan was adopted by the planning commission.

In the meantime, the Visalia Historic Preservation Advisory Board recommended the placement of the existing single family residence, known locally as the McSwain Mansion, on the local historic register. The board felt that the structure was of such character that it qualified as a historic landmark. On September 3, 1985, the Visalia City Council amended the local historic register to include the site. Any expansion or alteration of the exterior of the structure, or requests for rezoning, would have to be approved by the advisory board.

On September 3, 1985, the Visalia City Council held a hearing on the proposed amendment to the general plan. A memo from the planning staff recommended the amendment. An environmental impact report (EIR) for the area was also presented to the council. The EIR stated that the project's location is consistent with the general plan's requirement that professional offices have direct access from major arterials. In reviewing potential environmental impacts, including traffic capacity, the EIR concluded that no significant adverse impacts would result from conversion of the property to professional offices.

On September 16, 1985, the city council passed the amendment to the general plan, unconditionally changing the land use designation from residential to professional administrative office.

On October 24, 1985, respondents applied for a zoning change from multifamily residential to professional administrative office, consistent with the amendment to the general plan. On January 8, 1986, the zoning change was considered by the Historic Preservation Advisory Board. The proposed realignment of Court Street was discussed, but there is nothing to indicate that a conditional dedication was also mentioned. The board unconditionally recommended the zoning change.

On March 3, 1986, the city council approved the rezoning. The transcripts of the zoning hearing are not included in the record. However, appellant states that the existence of the general plan requirements for Court Street, "and the fact that a dedication of a portion of the subject real property would be required as a condition of any change of use," was made clear to the respondents during the administrative process.[1] This conclusion is based on the fact the planning staff report, dated July 22, 1985, was included in the materials presented to the city council during the zoning process. As discussed above, this report contains statements referring to the need for "dedication of additional right-of-way." Respondents submitted applications for a site plan review and building permit to convert the residence to professional office space. The conversion involves installing bathrooms equipped for the handicapped, creating on-site parking facilities, and other relatively minor renovations. The site plan and building permit were approved on condition that respondents dedicate part of their land for the realignment of Court Street. The pertinent conditions relating to the street dedication were contained in the engineering and traffic reviews. The engineering staff review sheet has a checkmark for a right-of-way requirement and the following language: "Reqd. Per info available in Engineer's office." A small note is superimposed at the bottom of the page: "We could need some additional [right-of-way] at the [corner] for the Court/Locust St. Transition." The traffic division review states that "[a]dditional [right-of-way] along Court St. [and] 30' radius [at] Court/Tulare" is required. The site plan review fails to specify the precise location and amount of property required for the street dedication.

The city staff presented a precise dedication proposal on March 28, 1986. The proposed dedication consists of a triangular piece of land on the east edge of the property. At its widest point, the triangle is approximately 25 feet wide. The entire property is 24,259.6 square feet; the proposed dedication is for 3,401.6 square feet. The proposed dedication represents 14 percent of the entire property. Respondents claim that the land proposed for dedication is worth $25,000.

On May 15, 1986, the planning commission held a hearing on respondents' challenge to the dedication condition. The planning commission denied the challenge to the dedication condition, reasoning that it was proper because respondents were aware of the realignment.

On June 2, 1986, the city council heard respondents' challenge to the conditional dedication. The council denied the appeal and required the

---

[1] This statement seems to indicate that the change of use and rezoning, rather than the building permit, was conditioned on the dedication.

dedication of the parcel as a condition of granting the site plan approval and the issuance of the building permit.

On June 25, 1986, respondents filed a petition in Tulare County Superior Court for a writ of mandamus ordering the city to delete its dedication condition to the issuance of the building permit. On August 2, 1988, the trial court issued its order granting the writ of mandamus. The court determined that the increased traffic flow in the area caused by the professional development was of a "very minuscule nature." The court acknowledged the city's power to require the dedication of land as a condition of development but ruled that it was limited by Government Code section 65909. It determined that there was no reasonable relation between the required dedication and the use for which the building permit was requested.

The city appeals the order granting the writ of mandamus on the bases that Government Code section 65909 is inapplicable to Visalia, a chartered city, and that the dedication was a reasonable requirement of the site plan and building permit due to increased traffic from the conversion. Respondents claim there is no reasonable relationship between the issuance of a building permit and the dedication of 14 percent of their property.[2]

DISCUSSION

*May the City Condition Approval of the Site Plan and Issuance of the Building Permit on Respondents' Dedication of the Land for the Realignment of Court Street?*

Appellant contends that the trial court erroneously relied on the limitations of Government Code section 65909 when it rejected the conditional dedication. Section 65909 is contained in chapter 4 of title 7 of the Government Code, entitled "Zoning Regulations." The applicability of this chapter to local entities is limited by Government Code section 65803, which states: "Except as otherwise provided, this chapter shall not apply to a charter city, except to the extent that the same may be adopted by charter or ordinance of the city." Accordingly, Visalia's status as a chartered city provides an exemption from the zoning regulations in the Government Code, including section 65909. (*Verdugo Woodlands Homeowners etc. Assn.* v. *City of Glendale* (1986) 179 Cal.App.3d 696, 702-703 [224 Cal.Rptr. 903].)

Even though section 65909 does not control the instant action, this does not end our inquiry. We must determine whether the trial court properly

---

[2] An agreement between respondents and the city allowed respondents to obtain the building permit and complete renovation of the structure on condition respondents surrender the deed to the disputed parcel to their attorney pending resolution of this action.

determined that the conditional dedication was not reasonably related to the proposed conversion.

■ A dedication involves the uncompensated transfer of an interest in private property to a public entity for public use. (*Carstens* v. *California Coastal Com.* (1986) 182 Cal.App.3d 277, 285 [227 Cal.Rptr. 135].) ■ A regulatory body may constitutionally require a dedication of land as a condition of development, and such a requirement is not viewed as an act of eminent domain. (*Associated Home Builders etc., Inc.* v. *City of Walnut Creek* (1971) 4 Cal.3d 633, 638-640 [94 Cal.Rptr. 630, 484 P.2d 606, 43 A.L.R.3d 847]; *Salton Bay Marina, Inc.* v. *Imperial Irrigation Dist.* (1985) 172 Cal.App.3d 914, 936 [218 Cal.Rptr. 839].)

The government is limited, however, in its power to impose conditional dedications. A grant of public privilege, such as a building permit, may not be conditioned upon the deprivation of constitutional protections. (*Scrutton* v. *County of Sacramento* (1969) 275 Cal.App.2d 412, 421 [79 Cal.Rptr. 872].) "An arbitrarily conceived exaction will be nullified as a disguised attempt to take private property for public use without resort to eminent domain or as a mask for discriminatory taxation." (*Ibid.*) If the applicant must donate property for a public use that bears no relationship to the benefit conferred on the applicant or the burden imposed on the public, there is a taking of property. (*Remmenga* v. *California Coastal Com.* (1985) 163 Cal.App.3d 623, 627 [209 Cal.Rptr. 628].) "Conversely, if there is such a rational relationship, the requirement of dedication of property . . . is a validly imposed condition. [Citations.]" (*Ibid.*)

Any government action, including a dedication requirement, which deprives the owner of all reasonable use of his property amounts to a taking which must be compensated. (*Salton Bay Marina, Inc.* v. *Imperial Irrigation Dist., supra,* 172 Cal.App.3d at p. 937.) ■ Where the conditions imposed are not reasonably related to the landowner's proposed use, but are imposed by a public entity to shift the burden of providing the cost of a public benefit to one not responsible, or only remotely or speculatively benefiting from it, there is an unreasonable exercise of police power. (*Liberty* v. *California Coastal Com.* (1980) 113 Cal.App.3d 491, 502 [170 Cal.Rptr. 247]; *Whaler's Village Club* v. *California Coastal Com.* (1985) 173 Cal.App.3d 240, 259 [220 Cal.Rptr. 2].)

Whether there has been a reasonable exercise of the police power is a question for the court. (*Liberty* v. *California Coastal Com., supra,* 113 Cal.App.3d at p. 502.) The relationship between the condition exacted by the public entity and the use proposed by the landowner presents a factual

inquiry for the trial court. (*Scrutton* v. *County of Sacramento, supra,* 275 Cal.App.3d at p. 422.)

■ An entity may conditionally approve a subdivision map on condition the subdivider dedicate property for streets or parks. Dedications of land for streets, in order to provide reasonable traffic flow for the general welfare of lot owners and the public, is not a taking under the power of eminent domain because it is reasonably related to the increased traffic and other needs of the proposed subdivision. (*Ayres* v. *City Council of Los Angeles* (1949) 34 Cal.2d 31, 42 [207 P.2d 1, 11 A.L.R.2d 503]; *Liberty* v. *California Coastal Com., supra,* 113 Cal.App.3d at p. 500.)

In *Associated Home Builders etc., Inc.* v. *City of Walnut Creek, supra,* 4 Cal.3d 633, a subdivider was required to provide property for parks and recreational facilities, or pay a fee in lieu of property, as a condition of approval of the subdivision map. The requirement for providing park space was part of the city's general plan of preserving open spaces for recreational facilities in the face of increased development in the area. (*Id.* at pp. 635-637.)

The requirement was valid even though the subdivision alone did not create the need for the dedication. *Associated Home Builders* has been interpreted as holding that the justification for required dedication is not limited to the needs of or burdens created by the project. (*Remmenga* v. *California Coastal Com., supra,* 163 Cal.App.3d at p. 628.) The decision, however, was based on the city's overall need to preserve open land for parks because of the increased growth and development from subdivisions. In addition, the enabling statutes required that the amount and location of dedicated land or fees bear a reasonable relationship to the use of the recreational facilities by future inhabitants of the subdivision.[3] While the facilities need not solely benefit the subdivision, they must serve the subdivision directly or indirectly. (*Associated Home Builders etc., Inc.* v. *City of Walnut Creek, supra,* 4 Cal.3d at pp. 639-641.) The court found a reasonable relationship between the needs of the subdivision and the condition imposed based on the influx of new residents into the subdivision, which increased the need for recreational facilities throughout the community. The subdivision residents benefited indirectly within the framework of the city's primary objective of providing recreational facilities.

Dedications and easements also have been required as a condition of obtaining coastal development permits. In *Liberty* v. *California Coastal*

---

[3] Former Business and Professions Code section 11546 is now Government Code sections 66477, 66479.

*Com., supra,* 113 Cal.App.3d 491, plaintiff sought to demolish an existing structure and erect a restaurant across from a beach. The California Coastal Commission approved the plan on condition that plaintiff provide adequate parking for the patrons. He was also required to record a deed restriction to provide free parking until 5 p.m. in the restaurant's lot for 30 years to offset the need for public parking near the beach. The area required additional public parking because of an earlier planning failure to require other restaurants to provide sufficient parking. (*Id.* at pp. 495-496.) Plaintiff challenged the condition as an abuse of discretion and a taking without just compensation.

The court agreed with the commission's determination that parking was a problem near the beach. While the commission was authorized to require adequate parking for the restaurant, it could not require "a landowner to dedicate property for free public parking far beyond his own land use requirements . . . ." (113 Cal.App.3d at p. 502.) It distinguished *Associated Home Builders* because the commission was only authorized to provide access to the coast, rather than require dedication for public parking. (*Ibid.*)

Conditions imposed on land use applications "are valid if reasonably conceived to fulfill public needs emanating from the landowner's proposed use." (*Liberty* v. *California Coastal Com., supra,* 113 Cal.App.3d at p. 503.) " 'Various factors are taken into consideration by courts in determining whether in a given situation there is a proper exercise of the police power, in which case, . . ., the landowner must yield "uncompensated obedience" [citation], or whether a governmental exercise of the power of eminent domain is masquerading in the guise of the police power. The determining factor . . . is fairness.' " (*Id.* at pp. 502-503.) While it was appropriate for the commission to require ample parking for the intended use, it was unfair to go beyond that and require plaintiff to provide free parking for the beach and other restaurants for which sufficient parking had not been originally planned or provided. "The State Commission is here attempting to disguise under the police power its actual exercise of the power of eminent domain. That it cannot do." (*Id.* at p. 504.) To impose the burden on one property owner to an extent beyond his own use "shifts the government's burden unfairly to a private party." (*Ibid.*)

The United States Supreme Court recently reviewed the validity of an easement required by the California Coastal Commission as a condition of obtaining a building permit. In *Nollan* v. *California Coastal Comm'n* (1987) 483 U.S. 825 [97 L.Ed.2d 677, 107 S.Ct. 3141], plaintiff was required to obtain a coastal development permit when he decided to demolish an existing house and build a new one on his seafront lot. The commission granted the permit on condition that plaintiff allow the public an easement to pass

across a portion of his property to the beach. The commission determined that the new house would block the view of the ocean and create a wall of residential houses, preventing the public from " 'psychologically . . . realizing' " the existence of the shoreline. (*Id.* at p. 828 [97 L.Ed.2d at p. 684].) The new house would also hinder public access to the beach, and the commission required an offset of that burden by providing additional access to the public beaches through an easement across plaintiff's property.

The court noted that a taking clearly would have resulted if the commission simply required such an easement, rather than impose it as a condition of the building permit. (483 U.S. at p. 831 [97 L.Ed.2d at pp. 685-686].) The requirement of an uncompensated easement outright would violate the Fourteenth Amendment. "[T]he question becomes whether requiring [the conveyance] . . . as a condition for issuing a land-use permit alters the outcome." (*Id.* at p. 834 [97 L.Ed.2d at p. 687].)

The commission could have prohibited the permit if the new house substantially impeded the purposes of protecting the public's ability to see the beach, unless the denial would so drastically interfere with the use of the property that it was a taking. (*Nollan* v. *California Coastal Comm'n, supra,* 483 U.S. at p. 835 [97 L.Ed.2d at p. 688].) "The evident constitutional propriety disappears, however, if the condition substituted for the prohibition utterly fails to further the end advanced as the justification for the prohibition. When that essential nexus is eliminated, the situation becomes the same as if California law forbade shouting fire in a crowded theater, but granted dispensations" if an individual contributed a sum of money. (*Id.* at p. 837 [97 L.Ed.2d at p. 689].)

In reviewing the commission's reasons for requiring the easement, the court determined that the required nexus was absent.

"[T]he lack of nexus between the condition and the original purpose of the [coastal] building restriction converts that purpose to something other than what it was. The purpose then becomes, quite simply, the obtaining of an easement to serve some valid governmental purpose, but without payment of compensation. Whatever may be the outer limits of 'legitimate state interests' in the takings and land-use context, this is not one of them. *In short, unless the permit condition serves the same governmental purpose as the development ban, the building restriction is not a valid regulation of land use but 'an out-and-out plan of extortion.'* [Citation.]" (*Nollan* v. *California Coastal Comm'n, supra,* 483 U.S. at p. 837 [97 L.Ed.2d at p. 689], italics added.)

In requiring a " '*substantial* advanc[ing]' of a legitimate state interest" as a condition of abridging property rights through the police power, the court

viewed compliance as more than "a pleading requirement," or "an exercise in cleverness and imagination." (*Nollan* v. *California Coastal Comm'n, supra,* 483 U.S. at p. 841 [97 L.Ed.2d at p. 692].) "We are inclined to be particularly careful about the adjective where the actual conveyance of property is made a condition to the lifting of a land-use restriction, since in that context there is heightened risk that the purpose is avoidance of the compensation requirement, rather than the stated police power objective." (*Ibid.*) The commission could continue its coastal access program by use of its eminent domain power, but "if it wants an easement across the Nollans' property, it must pay for it." (*Id.* at p. 842 [97 L.Ed.2d at p. 692].)

The disagreement in the instant case is whether there is a sufficient nexus or relationship between the condition imposed and respondents' proposed conversion. The authority relied upon by the city to impose the conditional dedication is section 7429 of its zoning regulations. Section 7429 permits the city to grant the planned development permit on condition the applicant dedicate, among other things, all necessary rights-of-way to widen a bordering or traversing major street to its ultimate width established as the standard for such major street. Section 7429 provides: "REQUIRED IMPROVEMENTS. Because of changes which may occur in a local neighborhood *due to increased vehicular traffic generated by facilities requiring a planned development permit,* and upon the principle that *such developments should be required to provide street dedications and improvements proportionate to such increased vehicular traffic,* the following dedications and improvements may be deemed necessary by the Site Plan Review Committee and may be required as a condition to the approval of any site plan. Residential developments should not, however, be required to provide such street facilities for non-related vehicular traffic." (Italics added.) By its terms, the premise of section 7429 is to require developers to provide various street dedications to offset the increased vehicular traffic resulting from the development. The ordinance represents a valid exercise of the police power in requiring developers to compensate for the increased burden placed on local traffic patterns by the influx of additional residents or traffic.

The trial court determined that there was not a reasonable relationship between the condition imposed and the use of the property. The dedication requirement is based on a 1978 amendment to the general plan to alter existing traffic patterns in southeastern Visalia. The underlying purpose was to plan for general future growth needs of the city by providing a thoroughfare between Court and Locust Street. The major part of the plan calls for a curved arterial near Locust Street, which is well north of respondents' property. As part of this general plan amendment, the council also decided to realign Court Street at its intersection with Tulare Avenue, which, as a result of an earlier planning failure, is imperfectly aligned. The plan was not

designed because of projections on the future traffic needs of the Court/Tulare area, or its development as a major professional enclave, but as part of the general plan for the growth of the community. The correction of the original imperfect intersection was included as part of the street conversion.

The city staff, in evaluating the proposed professional office development, concluded that no significant traffic problems would result from the conversion of the parcel. In evaluating the traffic impact from the conversion of two adjoining parcels to professional offices, the staff concluded that "the conversion of these three properties to [professional] uses would appear to generate less traffic impact than their development to existing multiple family zoning potential."[4] The staff report also mentioned that "the proposed Court St. alignment will necessitate the dedication of additional right-of-way along the northeast corner of the subject property." The report does not state that the alignment is necessary because of increased traffic from the development; rather, the report referred to the realignment as part of the 1978 general amendment.

The trial court had substantial evidence from which to conclude that there is no reasonable relationship between the conditional dedication and the proposed use of respondents' property. It is clear that the Court Street realignment was made necessary by an instance of poor planning during the original development of the intersection. There is nothing in the record to indicate that development of professional offices, both on respondents' property and the two adjoining parcels, would generate such "increased vehicular traffic" that respondents should provide street dedications which are clearly *not* "proportionate to such increased vehicular traffic" pursuant to section 7429 of the zoning regulations.

Appellant argues, pursuant to *Associated Home Builders,* that the conditional dedication need not be based on the impact caused by the proposed development. The recreation dedication required by Walnut Creek, however, was part of the city's overall plan to offset increased residential development by reserving open spaces for parks that might otherwise succumb to additional development. The court concluded that present and future residents of the subdivision would benefit both directly and indirectly by the existence of parks in settled locations throughout the city.

In the instant case, the conditional dedication resembles the public parking easement required in *Liberty*. The condition is not related to the pro-

---

[4] The amendment to the general plan, which changed the land use designation of respondents' property, also changed the designation of the two adjacent parcels which were discussed by the planning report when it evaluated the traffic impact of professional offices.

posed professional development but is a "means of shifting the burden of providing the cost of a public benefit to another not responsible for or only remotely or speculatively benefiting from it." (*Liberty* v. *California Coastal Com., supra,* 113 Cal.App.3d at p. 502.) The proposed dedication bears absolutely no relationship, either direct or indirect, to the present or future use of the property. The city's attempt to condition the building permit on the dedication of 14 percent of respondents' property is merely an attempt to "disguise under the police power its actual exercise of the power of eminent domain." (*Id.* at p. 504.) The administrative record indicates that the city purchased the property necessary to proceed with an earlier project to widen Walnut Avenue and intends to purchase additional property to accomplish the Court/Locust connection to the east and west. The way the ultimate dedication requirement evolved is also revealing. It appeared, almost like an afterthought, in the Engineering Department's site plan review: "We could need some additional [right-of-way] at the cor[ner]. . . ."

Appellant argues that the required nexus exists because respondents' project imposes a greater traffic burden and creates the need for the street widening and realignment. This argument is based on "common sense," which indicates that the proposed conversion will result in an increased traffic flow and therefore contribute to the overall traffic problem. "The change in use imposes a greater traffic burden on the City's streets, and in particular on the streets immediately adjacent to the subject property."

The city contends that as long as there is some nexus, the amount of property required for dedication is unlimited. We need not reach this issue because there is no such nexus between the dedication condition and the alleged traffic burden created by the conversion. Contrary to appellant's contentions, the record disputes that the change in use of the property will impose a significant traffic burden in the area or the city's streets in general. The EIR concluded that the conversion of the property would impose no significant traffic problems in the area. The planning report acknowledged that conversion of the property, and others in the area, to professional use would decrease the potential traffic that could result if the zoning remained the same and apartments were built. The dedication required by the Site Plan Review was not based on any such traffic problems, but as a means of implementing the 1978 Court/Locust connection and the long-awaited realignment of Court Street at its intersection with Tulare Avenue. The determination of whether a legitimate state interest is being substantially advanced by the dedication condition is "more than a pleading requirement." (*Nollan* v. *California Coastal Com'n, supra,* 483 U.S. at p. 841 [97 L.Ed.2d at p. 692].) The record fails to present the required nexus.

Our review of the record indicates that the city viewed the landowners' application for rezoning and site plan review as the "hook" it needed to

acquire this property for nothing, even though the reasons for the dedication existed long before the conversion of the McSwain Mansion was proposed. The "hook," however, is unavailable. As in *Nollan,* the city may proceed with its general traffic plan, but if it wants 3,400 square feet of respondents' property for a street project lacking any relation to the proposed conversion, it must pay for it.

## DISPOSITION

The judgment is affirmed. Respondents are awarded their costs of appeal.

Stone (W. A.), Acting P. J., and Dibiaso, J., concurred.