[Civ. No. 20078. Third Dist. Feb. 25, 1982.]

EDWARD J. McCARTHY et al., Plaintiffs and Respondents, v. CALIFORNIA TAHOE REGIONAL PLANNING AGENCY et al., Defendants and Appellants.

224

COUNSEL

George Deukmejian, Attorney General, N. Gregory Taylor and Jan Stevens, Assistant Attorneys General, Craig C. Thompson and Kenneth R. Williams, Deputy Attorneys General, Richard G. Rypinski, Joseph C. Easley, Bruce A. Behrens and Larry Thielen for Defendants and Appellants.

Lempres & Wulfsberg, Sandra J. McNabb and Bruce P. Grego for Plaintiffs and Respondents.

OPINION

**SPARKS, J.**—Plaintiffs, leasehold owners and developers of property in South Lake Tahoe, brought this suit seeking a writ of administrative mandate (Code Civ. Proc., § 1094.5), together with declaratory and injunctive relief. The action sought to set aside California Tahoe Regional Planning Agency's (CTRPA) assertion of jurisdiction over plaintiffs' building project and to compel the California Department of Transportation (CALTRANS) to issue an encroachment permit allowing highway access to their property. The named individual defendants were sued in their official capacities. The matter was tried on the administrative record and stipulated facts and the testimony of plaintiffs' design consultant. Using its independent judgment in reviewing the administrative record, the trial court found plaintiffs had acquired a vested right

to complete the project before CTRPA regulations became effective, and that CTRPA consequently had no jurisdiction in the matter. It also found plaintiffs were entitled to the CALTRANS encroachment permit. We reverse.

I

We first view this case from a historical prospective. As we recounted in *Raley* v. *California Tahoe Regional Planning Agency* (1977) 68 Cal.App.3d 965 [137 Cal.Rptr. 699], CTRPA was created by the 1967 California Legislature as a separate California counterpart of the bistate agency, Tahoe Regional Planning Agency (TRPA). The Legislature validly delegated to CTRPA authority to enact interim and regional plans and to adopt ordinances and regulations effectuating those plans. On July 12, 1974, CTRPA adopted an interim plan subjecting private commercial projects to its review. That interim plan was succeeded by a regional plan for the California side of Lake Tahoe adopted on August 29, 1975, and a land use ordinance implementing that plan was adopted in September 1975.

The record shows that plaintiffs leased the property, located at 4093 Lake Tahoe Boulevard, and lying between Highway 50 and Laurel Avenue in the City of South Lake Tahoe, in October 1974. At that time, there were four buildings on the lot: a two-story home, a two-story real estate office and apartment, a storage shed, and a barber shop. Each had rental potential. There was then direct access to Highway 50 via three driveways.

Plaintiffs' initial plan was to convert the home into a restaurant but the South Lake Tahoe City Council denied their application for the conversion. They then developed plans to demolish the existing structures and build a new building to house the restaurant and offices. An environmental impact statement was prepared and presented to the city; the city council directed filing of a certificate of negative impact on June 3, 1975. On August 20, 1975, plaintiffs submitted applications to the city for a demolition permit and for a building permit for the foundation of the new structure. The plans submitted for the building permit showed the site, the foundation, and the two-story exterior of the proposed building, but did not include interior electrical, mechanical or plumbing features because plaintiffs did not know what the specific requirements for the restaurant would be at that point.

Plaintiffs' building plans were conditionally approved by the city's architectural review committee on August 22, 1975. One of the conditions imposed was that the driveway to Highway 50 be shifted so as to be perpendicular to Highway 50. The report sent to plaintiffs included the following note: "The Tahoe Regional Planning Agency and the California Tahoe Regional Planning Agency may be adopting ordinances that could possibly require changes to this project. You should determine what effect these proposed ordinances might have by contacting these agencies."

The city issued a foundation building permit and a demolition permit to plaintiffs on August 27, 1975. The city had earlier adopted the 1973 Uniform Building Code, a portion of which (in effect when plaintiffs' foundation building permit was issued) read: "The Building Official may issue a permit for the construction of part of a building or structure before the entire plans and specifications for the whole building or structure have been submitted or approved provided adequate information and detailed statements have been filed complying with all pertinent requirements of this Code. The holder of such permit shall proceed at his own risk without assurance that the permit for the entire building or structure will be granted."

Plaintiffs then demolished three of the existing buildings, including the house, which was valued at $40,000 to $45,000, cleared the site, graded and trenched, and built the foundation. The work was inspected by the city on August 29 and 30. Final approval was given on September 2, 1975. The foundation included the perimeter and interior bearing wall supports. It was constructed at a cost under $5,000; the total cost of the project at that point, exclusive of the value of the demolished buildings, was about $20,000. The anticipated total cost was approximately $150,000.

CALTRANS approved plaintiffs' application for an encroachment permit allowing one 20-foot driveway to Highway 50 on September 4, 1975, and forwarded it to the city on December 8, 1975. The permit was not signed by a city official nor sent to plaintiffs.

On October 19, 1975, CTRPA's land use ordinance for the area became effective.[1] New commercial development and some additions to

---

[1]CTRPA does not contend that its adoption of the interim plan in 1974 or the regional plan in August of 1975 affects the outcome of this case.

existing developments were required to obtain CTRPA permits before construction began. Structures for which a valid building permit issued on or before September 19, 1975, upon which substantial construction had commenced prior to that date, were exempted.

In December of 1976, plaintiffs applied to the city for permits to complete the structure. CTRPA asserted jurisdiction over the project. Plaintiffs objected on the ground that their right to proceed was vested under the land use ordinance and they were thus exempt. They requested a hearing on the question and submitted an application for CTRPA approval of the project in support of their alternative argument that the project met all CTRPA requirements and in an effort to "mitigate damages."

CTRPA held a hearing on the matter on October 7, 1977. Counsel for plaintiffs and the project designer appeared. The CTRPA board determined plaintiffs had no vested right because substantial construction had not commenced on the project pursuant to valid building permits. It then approved the project subject to the condition, inter alia, that there be no direct vehicular access to Highway 50.

CTRPA notified the city of the no-auto-access condition; the city then sent the original unsigned encroachment permit back to CALTRANS for updating. CALTRANS refused to take action until CTRPA approval was submitted.

Plaintiffs refused to accept CTRPA's conditions and brought suit after CTRPA issued a stop work notice in May of 1978. Relying on *Glenel Realty Corp.* v. *Worthington* (1957) 4 App.Div.2d 702 [164 N.Y.S.2d 635], and *Herskovits* v. *Irwin* (1930) 299 Pa. 155 [149 A. 195], the trial court concluded that plaintiffs acquired a vested right by obtaining a foundation permit prior to the enactment of the CTRPA land use ordinance and by then demolishing existing structures and constructing the foundation. As noted, the trial court entered judgment for plaintiffs against both CTRPA and CALTRANS, enjoined CTRPA from further interference with the project, and directed CALTRANS to issue the encroachment permit.

On appeal, CTRPA contends the vested rights doctrine is inapplicable to plaintiffs because they did not have a complete building permit, did not act in good faith reliance on the permits issued, and did not per-

form substantial work or incur substantial liabilities on the project. CTRPA further asserts plaintiffs are estopped from challenging its jurisdiction because they accepted the benefit of the conditional approval by continuing construction before the stop work order issued. CALTRANS contends encroachment permit issuance is discretionary, prior CTRPA approval is necessary, and plaintiffs never held a valid encroachment permit.

The record shows that access to Highway 50 is the crux of the dispute between plaintiffs and CTRPA. Before trial, the parties stipulated that construction would continue on the project under all but CTRPA's conditions specifying acceptance of its conditions, the expiration date of the conditional permit, and the construction of physical barriers to highway access, and that any subsequent relief obtained from the trial court would affect only these conditions. The briefs on appeal indicate the building is now complete. Thus the issue presented to us is whether any vested rights accrued to plaintiffs to prevent CTRPA's assertion of jurisdiction over highway access.

## II

■ Before addressing the substantive contentions of the parties, we consider the scope of our review and that of the trial court.[2] When, as here, "... the administrative proceedings are adjudicatory, the court must proceed under Code of Civil Procedure section 1094.5, and a two-tier rule applies: if the agency decision substantially affects a fundamental vested right, the trial court must exercise its independent judgment on the evidence and find an abuse of discretion if the findings are not supported by the weight of the evidence (§ 1094.5, subd. (c)); otherwise the trial court's inquiry is limited to a determination of whether the findings are supported by substantial evidence in light of the whole record. (§ 1094.5, subd. (b).) ... [¶] If the trial court was authorized to exercise its independent judgment on the evidence, the appellate court can overturn its factual findings 'only if the evidence received by the trial court, including the record of the administrative proceeding, is insufficient as a matter of law to sustain the finding.' If the trial court was limited to the substantial evidence test itself, however, 'the trial and appellate courts occupy identical positions with re-

---

[2]There is no dispute here that the asserting of jurisdiction by CTRPA over plaintiffs' project constituted an adjudicatory act activating the provisions of Code of Civil Procedure section 1094.5.

gard to the administrative record, and the function of the appellate court, like that of the trial court, is to determine whether that record is free from legal error.' ... Thus, in the first instance the appellate court need only review the record to determine whether the *trial court's* findings are supported by substantial evidence; in the second, the appellate court itself reviews the administrative record to determine whether the agency's decision was supported by substantial evidence." (*Patterson* v. *Central Coast Regional Com.* (1976) 58 Cal.App.3d 833, 840, 842 [130 Cal.Rptr. 169]; citations omitted; italics in original.)

The issue, then, is whether plaintiffs' asserted right of access to Highway 50 involved a "fundamental vested right." The Supreme Court noted in *Merrill* v. *Department of Motor Vehicles* (1969) 71 Cal.2d 907, 915 [80 Cal.Rptr. 89, 458 P.2d 33], that "[t]he question whether or not the right affected is 'vested' is decided by the courts on a case-by-case basis. [Citations.]" That case-by-case analysis required the trial court to determine that the claimed right is both "vested" and "fundamental." (*Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 34 [112 Cal.Rptr. 805, 520 P.2d 29].)

We examine first the claim of a "vested" right. To resolve that claim we must "... determine the delicate question of whether the determination of whether a vested interest exists, as distinguished from the question of the rights appertaining to such an interest, requires the exercise of independent judgment by a court reviewing an administrative decision, or merely a determination that there is substantial evidence in the light of the whole record to sustain the administrative finding. (Code Civ. Proc., § 1094.5, subd. (c). Cf. *Mobil Oil Corp.* v. *Superior Court* [Air Pollution Control District of San Diego County] (1976) 59 Cal.App.3d 293, 304-305 [130 Cal.Rptr. 814] [hg. den. Sept. 8, 1976], with *Transcentury Properties, Inc.* v. *State of California* (1974) 41 Cal.App.3d 835, 844 [116 Cal.Rptr. 487]; and note *Avco Community Developers, Inc.* v. *South Coast Regional Com., supra,* 17 Cal.3d at p. 796, fn. 7; and *Aries Dev. Co.* v. *California Coastal Zone Conservation Com.* (1975) 48 Cal.App.3d 534, 545 [122 Cal.Rptr. 315].)" (*Oceanic California, Inc.* v. *North Central Coast Regional Com.* (1976) 63 Cal.App.3d 57, 62 [133 Cal.Rptr. 664].)

The term "vested," when used in the "fundamental vested rights" doctrine to determine the scope of judicial review is not synonymous with its use in the "vested rights" doctrine relating to land use and development. As used in the scope of judicial review, "[t]he term 'vested'

has been used in a nontechnical sense to denote generally a right 'already possessed' (*Bixby* v. *Pierno, supra*, 4 Cal.3d 130, at p. 146 [93 Cal.Rptr. 234, 481 P.2d. 242]) or 'legitimately acquired.' (*Strumsky* v. *San Diego County Employees Retirement Assn., supra*, at p. 34.) On this basis, this court has distinguished generally between applicants and recipients in determining whether a right is 'vested' for the limited purpose of determining the applicable scope of review." (*Harlow* v. *Carleson* (1976) 16 Cal.3d 731, 735 [129 Cal.Rptr. 298, 548 P.2d 698].) On the other hand, as used in the vested right doctrine, "vested" means the irrevocable right to complete construction notwithstanding an intervening change in the law that would otherwise preclude it. (*Aries Dev. Co.* v. *California Coastal Zone Conservation Com., supra*, 48 Cal.App.3d at p. 543.) In short, a vested right for review purposes means a preexisting right while a vested right for construction means a right the government is estopped to deny. (*Patterson* v. *Central Coast Regional Com., supra*, 58 Cal.App.3d at p. 844.)

Thus, for purposes of review, plaintiffs did not have a preexisting right to construct the highway access driveway. No permit for that purpose had ever been issued or delivered to them either by the City of South Lake Tahoe, CTRPA or CALTRANS. They sought instead a declaration of exemption from CTRPA regulations based upon the doctrine of estoppel. In this sense, plaintiffs were applicants for, and not prior recipients of, a governmental approval. Moreover, an applicant seeking an encroachment permit has no vested, preexisting right to obtain one. (Sts. & Hy. Code., §§ 671, 672; *People* v. *Henderson* (1948) 85 Cal.App.2d 653 [194 P.2d 91].)

Nor was plaintiffs' asserted right to vehicular access to Highway 50 a "fundamental" one. A right is deemed fundamental "... when that right is of a fundamental nature from the standpoint of its economic aspect or its 'effect ... in human terms and the importance ... to the individual in the life situation,' then a full and independent *judicial* review of that decision is indicated...." (*Strumsky* v. *San Diego County Employees Retirement Assn., supra*, 11 Cal.3d at p. 34; italics in original.) "Thus ... a right may be deemed fundamental within the meaning of *Bixby* [v. *Pierno* (1971) 4 Cal.3d 130] on either or both of two bases: (1) the character and quality of its economic aspect; (2) the character and quality of its human aspect." (*Interstate Brands* v. *Unemployment Ins. Appeals Bd.* (1980) 26 Cal.3d 770, 780 [163 Cal. Rptr. 619, 608 P.2d 707].)

As the Supreme Court noted in *Harlow* v. *Carleson, supra*, 16 Cal.3d at page 736, "[a]pplying the *Bixby* principle we have held to be not so fundamental as to necessitate application of the independent judgment test, various rights and interests including the interest of an applicant in a zoning variance (*Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506, 510, fn. 1 [113 Cal.Rptr. 836, 522 P.2d 12]), a corporation's right to obtain approval of a recapitalization plan (*Bixby* v. *Pierno, supra*, at p. 130), the right of bridge bondholders to prevent the construction of a neighboring bridge (*Faulkner* v. *Cal. Toll Bridge Authority* (1953) 40 Cal.2d 317 [253 P.2d 659]), and the right of a water company in diverting water from a particular river (*Temescal Water Co.* v. *Dept. Public Works* (1955) 44 Cal.2d 90 [280 P.2d 1].) In those cases we concluded that the deferential substantial evidence standard should be used in reviewing the administrative decisions."

Here plaintiffs have access to their property from a city street which intersects the nearby state highway. A direct access to Highway 50, while no doubt commercially advantageous, cannot be construed of such an economically essential character as to be of a fundamental nature.

We conclude therefore that the substantial evidence standard should have been used by the trial court in reviewing the administrative decision of CTRPA.

Moreover, the facts before CTRPA were undisputed. "Where the facts before the administrative body are uncontradicted, the determination of their effect is a question of law and the findings and conclusions of the trial court, whether the scope of review be the substantial evidence or independent judgment test, are not controlling on appellate review." (*Aries Dev. Co.* v. *California Coastal Zone Conservation Com., supra*, 48 Cal.App.3d at p. 545.)

Thus we examine the administrative record to determine whether CTRPA's decision was supported by substantial evidence.

### III

"It has long been the rule in this state and in other jurisdictions," the Supreme Court noted in *Avco Community Developers, Inc.* v. *South Coast Regional Com.* (1976) 17 Cal.3d 785, 791 [132 Cal.Rptr. 386, 553 P.2d 546], "that if a property owner has performed substantial

work and incurred substantial liabilities in good faith reliance upon a permit issued by the government, he acquires a vested right to complete construction in accordance with the terms of the permit." The rule, which we have called a special expression of the general estoppel doctrine (*Raley* v. *California Tahoe Regional Planning Agency, supra,* 68 Cal.App.3d at p. 977), operates to limit the vulnerability of property developers to shifts in zoning or other land use regulations occurring during the preparatory stages of a project. (*Id.,* at p. 975.) There is language in some California cases on the subject to the effect that no rights will vest until an owner possesses all of the necessary government permits for the project (see, e.g., *People* v. *County of Kern* (1974) 39 Cal.App.3d 830, 838 [115 Cal.Rptr. 67]), but the better view expressed in other cases (and adopted by CTRPA) is that performance of work pursuant to permits issued for aspects of a project short of completion will vest rights to complete that stage of the work. (See *Avco Community Developers, Inc.* v. *South Coast Regional Com., supra,* 17 Cal.3d at p. 792, citing *Spindler Realty Corp.* v. *Monning* (1966) 243 Cal. App.2d 255 [53 Cal.Rptr. 7] (grading permit); *Court House Plaza Co.* v. *City of Palo Alto* (1981) 117 Cal.App.3d 871 [173 Cal.Rptr. 161] (first phase of two-stage building project).)

Plaintiffs concede that no California court has yet addressed the question whether a developer who claims detrimental reliance upon a foundation permit gains a vested right to complete the entire project. We need not resolve that issue, however, because there is substantial evidence in the record to support the agency's decision that there was no such detrimental reliance here.

The staff report submitted to CTRPA stated: "It is staff's opinion that the project is not 'vested' and must be reviewed by the Governing Board in that substantial construction has not commenced on the project pursuant to valid building permits. (The permit issued on the project by the City of South Lake Tahoe Building Department was for a foundation *only.*) Building plans were not submitted to the Building Department until December 1976." (Italics added.) That report accordingly recommended that plaintiffs' request for a finding of vested rights be denied. After hearing the recited evidence on the question, the governing board of CTRPA voted ". . . to deny the finding of vested rights on the grounds that substantial construction has not commenced in reliance on valid building permits."

It is difficult to conceive how the agency could have reached any other result. As a matter of law, plaintiffs were chargeable with the

imputed knowledge that a holder of a foundation permit "... shall proceed at his own risk without assurance that the permit for the entire building or structure will be granted." But more than that, plaintiffs had actual knowledge of the impending regulation. Before plaintiffs demolished anything and before they constructed the foundation they were expressly warned that CTRPA "may be adopting ordinances that could possibly require changes to this project." Plaintiffs chose to ignore that warning and did so, we conclude, at their peril. One cannot rely in good faith upon a governmental permit when that government expressly counsels against reliance. Moreover, the hasty sequence of events here compels the conclusion that the work performed and sums expended were guilefully and precipitously done solely to gain a vested position designed to evade the imminent application of CTRPA regulations. The land use ordinance had its first reading on June 6, 1975, and was scheduled for adoption on its second reading on September 19, 1975. The application for the foundation was not filed until August 20, 1975. The permit was issued on August 27th and within six days plaintiffs demolished the buildings and installed the foundation. Yet building plans for that foundation were not submitted until some 15 months later. "One who proceeds with 'unseemly haste' bears a risk 'that his conduct might bear the stigma of bad faith.' [Citation.]" (*Aries Dev. Co.* v. *California Coastal Zone Conservation Com., supra*, 48 Cal.App.3d at p. 549.) Given these uncontested facts, we hold as a matter of law that there was no good faith reliance by plaintiffs upon the foundation permit.[3]

Since we conclude there was no good faith reliance, we need not determine whether the demolition of the buildings constituted a substantial expenditure. For the same reason, we do not address the remaining contentions of the parties.

The judgment is reversed.

Blease, Acting P. J., and Reynoso, J.,* concurred.

Respondents' petition for a hearing by the Supreme Court was denied April 21, 1982. Reynoso, J., did not participate therein.

---

[3]For that reason, even if the trial court had been entitled to exercise its independent judgment on the evidence, its finding of reliance was insufficient as a matter of law.

*Assigned by the Chairperson of the Judicial Council.