[No. B005654. Second Dist., Div. Six. Oct. 11, 1985.]

WHALER'S VILLAGE CLUB, Plaintiff and Respondent, v. CALIFORNIA COASTAL COMMISSION, Defendant and Appellant.

CALIFORNIA COASTAL COMMISSION, Plaintiff and Appellant, v. WHALER'S VILLAGE CLUB, Defendant and Respondent.

242

248

COUNSEL

John K. Van de Kamp, Attorney General, N. Gregory Taylor, Assistant Attorney General, and Jamee Jordan Patterson, Deputy Attorney General, for Defendant and Appellant and Plaintiff and Appellant.

Ball, Hunt, Hart, Brown & Baerwitz, Charles E. Greenberg, Agnes H. Mulhearn and John W. Wissinger for Plaintiff and Respondent and Defendant and Respondent.

Ronald A. Zumbrun, Robert K. Best and Timothy A. Bittle as Amici Curiae on behalf of Plaintiff and Respondent and Defendant and Respondent.

OPINION

**STONE, P. J.**—The California Coastal Commission (Commission) appeals from a judgment granting a writ of mandamus ordering the Commission: 1) to remove from a new development permit conditions requiring respondent to offer to dedicate a public access easement along the beach fronting its property and cease interference with persons presently using the beach, 2) to unconditionally waive any claim of liability on the part of the Commission or any other public agency for any damage from erosion, and 3) to acknowledge that construction of the revetment may result in ineligibility for public disaster funds or loans for repair, replacement or rehabilitation of the property. The Commission also appeals denial of relief in its action for injunctive relief and civil penalties for violation of the California Coastal Act. (Pub. Resources Code, § 30000 et seq.)[1] We conclude the Commission could properly impose a condition that respondent offer to dedicate a public access easement. We further conclude that the Commission could extract a waiver of liability for damage caused by or to the construction for which a permit was issued but that the condition imposed was overly broad. There is insufficient evidence in the record to necessitate acknowledgement of ineligibility for public disaster funds. Accordingly, we affirm the judgment in part and reverse in part and remand to the trial court for a determination of the Commission's action for injunctive relief and civil penalties in light of this opinion.

FACTS

Whaler's Village, respondent, consists of 29 single-family homes built in 1969 and located on Pacific Coast Highway in Ventura County, California.

---

[1] All statutory references are to the Public Resources Code unless otherwise indicated.

The record indicates that when the homes were built, the beach extended well over 100 feet seaward, and wave action, even during storms, never came within 15 to 20 feet of the structures. Each house had two 12-foot deep friction-bearing caissons seaward and a load-bearing foundation wall 20 feet landward supporting the first floor slab which was poured directly on the sand. The caissons, not designed to support the structure alone, required a minimum of nine feet embedment to support vertical loads.

In March 1978, massive storms washed away large amounts of sand exposing the foundation walls. Homeowners avoided even more extensive damage by placing sandbags seaward of the foundation. They were advised by their consultants that a rock revetment in front of the caissons would help protect their homes from the force of the waves.

In October 1978, Whaler's Village applied to the South Coast Regional Commission (Regional Commission) for a coastal development permit (§ 30600) to construct a rock revetment of boulders and filter blanket on the beach under and in front of 17 of the homes. The Commission staff recommended granting the permit, conditioned upon the applicant's offer to dedicate an easement for public access from the toe of the revetment seaward to the mean high tide line. The homeowners withdrew their application.

In February 1980, similar violent storms exposed the caissons almost entirely, causing substantial damage to one house when the caissons sank approximately one foot and the first floor slab cracked over the foundation wall. Without applying for a coastal permit, Whaler's Village built a revetment consisting of 5- to 7-ton boulders with 50- to 150-pound boulders and gravel fill immediately in front of and beneath the 17 oceanfront homes and extending 3 to 5 feet above beach level and 6 to 8 feet into the sand. In February 1981, the Regional Commission notified Whaler's Village that a coastal development permit was necessary for placement of rocks and presence of mechanized construction equipment on the beach, and that failure to obtain a permit constituted a violation of the coastal act. In March 1981, following storms and high tides the homeowners placed additional boulders on the revetment. In May 1981, Whaler's Village applied for a permit for their already completed revetment. December 16, 1981, the Commission approved the permit application subject to the following conditions:

"1. The applicant shall execute and record a document . . . irrevocably offering to dedicate to a public agency or private association approved by the Executive Director, an easement for public access and passive recreational use along the shoreline. The document shall also restrict the applicant

from interfering with present use by the public of the areas subject to the easement prior to the acceptance of the offer. Such easement shall be for the entire width of the property, extending seaward from the toe of the revetment to the mean high tideline . . . .

"2. . . . the applicant shall submit a deed restriction which provides '(a) that the applicant understand that the site is subject to extraordinary hazard from erosion and that the applicant assumes the liability from this hazard; (b) the applicant unconditionally waives any claim of liability on the part of the Commission or any other public agency for any damage from such hazard; and (c) the applicant understands that construction in the face of this known hazard may make them ineligible for public disaster funds or loans for repair, replacement, or rehabilitation of the property in the event of erosion.' "

Whaler's Village filed a petition for writ of mandate challenging the Commission's permit conditions. (§ 30801; Code Civ. Proc., § 1094.5.) The Commission filed a complaint for injunctive relief, civil fines, penalties and exemplary damages to enforce provisions of the Coastal Act. Whaler's Village raised illegality and unconstitutionality of the conditions as an affirmative defense. Trial on the two cases was consolidated and the parties stipulated that the administrative record be admitted into evidence for purposes of both proceedings. Answers to interrogatories and requests for admissions as well as engineering reports and testimony on behalf of Whaler's Village were admitted into evidence in the enforcement action only.

After the trial court took the matter under submission, Whaler's Village sought an emergency permit to undertake repair work on the revetment due to summer storms and wave action in August 1983. The Commission issued an emergency permit with the same conditions as those appealed. The parties stipulated that the outcome of the litigation on the original permit would also be binding on the emergency permit.

December 12, 1983, the trial court issued its statement of intended decision granting peremptory writ of mandate. The court used the "independent judgment" test, "in that the taking here is of a vested property right, not a regulation of future use of property" and stated that "even using the 'substantial evidence' test, the Court can find no substantial evidence in the record to support the required dedication and waiver conditions." The court found that, although the coastal act may require a permit "for repair work such as done by petitioners in that tractors and machinery were required to go upon the beach," the revetment did not constitute a "new development" allowing the right to demand the dedication required; there is no evidence

to support a conclusion that the revetment will impede public access in any way different than caused by the homes themselves; there is no evidence to support the Commission's findings that construction of the revetment adversely affected public access to or across the beach; the condition requiring the homeowners to deed "their entire private beach to the State or lose their homes to the sea constitutes an unlawful taking of private property without justification or the payment of just compensation," and the waiver of liability is unsupported by the record. The court entered judgment granting a peremptory writ, commanded the Commission to issue the permit and the emergency permit without the challenged conditions, and held that the Commission take nothing by its complaint.

## DISCUSSION

### I

*Standard of Review for New Development Within the Meaning of Section 30212*

■ If the decision of an administrative agency substantially affects a "fundamental vested right," the trial court must not only examine the administrative record for errors of law, but also must exercise its independent judgment upon the evidence.[2] However, when the administrative decision neither involves nor substantially affects such a right, the trial court must review the entire administrative record to determine whether the findings are supported by substantial evidence and if the agency committed any errors of law. (*Berlinghieri* v. *Department of Motor Vehicles* (1983) 33 Cal.3d 392, 395 [188 Cal.Rptr. 891, 657 P.2d 383]; *Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 143 [93 Cal.Rptr. 234, 481 P.2d 242].)

■ If the trial court was authorized to exercise its independent judgment on the evidence, the reviewing court can overturn its factual findings only if the evidence received by the trial court, including the administrative record, is insufficient as a matter of law to sustain the finding. If, however, the trial court was limited to the substantial evidence test, the appellate court also applies that same test. (*Patterson* v. *Central Coast Regional Com.* (1976) 58 Cal.App.3d 833, 842 [130 Cal.Rptr. 169].)

---

[2]Subdivision (c) of Code of Civil Procedure section 1094.5 provides: "Where it is claimed that the findings are not supported by the evidence, in cases in which the court is authorized by law to exercise its independent judgment on the evidence, abuse of discretion is established if the court determines that the findings are not supported by the weight of the evidence; and in all other cases, abuse of discretion is established if the court determines that the findings are not supported by substantial evidence in the light of the whole record."

252

In the context of land use, a property owner acquires a vested right to continue a use actually instituted notwithstanding an intervening change in the law that would otherwise preclude it. (*Patterson v. Central Coast Regional Com.*, *supra*, 58 Cal.App.3d 833, 843; *McCarthy v. California Tahoe Regional Planning Agency* (1982) 129 Cal.App.3d 222, 230 [180 Cal.Rptr. 866]; see § 30608.) However, the landowner is required to present his exemption claim to the Commission as a condition to raising it in the trial court. (*South Coast Regional Com. v. Gordon* (1977) 18 Cal.3d 832 [135 Cal.Rptr. 781, 558 P.2d 867]; *State of California v. Superior Court* (1974) 12 Cal.3d 237 [115 Cal.Rptr. 497, 524 P.2d 1281].)

 The term "vested" in the sense of "fundamental vested rights" to determine the scope of judicial review, however, is not synonymous with its use in the "vested rights" doctrine relating to land use and development. (*McCarthy v. California Tahoe Regional Planning Agency*, *supra*, 129 Cal.App.3d 222, 229.) To determine the scope of judicial review, the term has been used to denote generally a right "already possessed" (*Bixby v. Pierno*, *supra*, at p. 146) or "legitimately acquired" (*Strumsky v. San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 34 [112 Cal.Rptr. 805, 520 P.2d 29]), for example, in the area of licensing and permit applicants and recipients. (*Harlow v. Carleson* (1976) 16 Cal.3d 731, 735 [129 Cal.Rptr. 298, 548 P.2d 698].) "In short, a vested right for review purposes means a preexisting right while a vested right for construction means a right the government is estopped to deny." (*McCarthy, supra,* at p. 230.) However, the test for " 'vestedness' " and " 'fundamentalness' " is one and the same. "The ultimate question in each case is whether the affected right is deemed to be of sufficient significance to preclude its extinction or abridgement by a body lacking *judicial* power." (*Frink v. Prod* (1982) 31 Cal.3d 166, 176 [181 Cal.Rptr. 893, 643 P.2d 476], italics in original.)

 Wherein lies the "right" to construct a revetment or seawall to protect one's dwelling from destruction? Respondent argues that the right involved here is *not,* as the Commission posits, the right to develop property in the coastal zone without a permit; it is the right to protect one's home from destruction and the right of privacy; the right to peaceful use and enjoyment of a home lawfully acquired; the right to exclude others from property lawfully acquired; and the right not to have one's yard acquired by government without payment of just compensation when one must act because of forces beyond one's control to exercise those first three rights.

Commission argues that a fundamental right to protect one's property under the Constitution (Cal. Const., art. I, § 1) is not the equivalent of a

vested right to protect property in a particular manner where the method chosen is one that is regulated by government; there can be no vested right to undertake such protection absent prior governmental approval to do so. We agree. ██ There is no constitutional right to own property free from regulation. Neither the state nor the federal Constitution guarantees any person absolute liberty of action. (*Max Factor & Co.* v. *Kunsman* (1936) 5 Cal.2d 446, 458 [55 P.2d 177].) "We do not consider lightly the importance of the constitutional guarantee attaching to private ownership and use of real property. [] However, more than 50 years ago, it was clearly established that property ownership rights, reserved to the individual by constitutional provision, must be subordinated to the rights of society. It is now a fundamental axiom in the law that one may not do with his property as he pleases; his use is subject to reasonable restraints to avoid societal detriment . . . ." (*People* v. *Byers* (1979) 90 Cal.App.3d 140, 147-148 [153 Cal.Rptr. 249]; *HFH, Ltd.* v. *Superior Court* (1975) 15 Cal.3d 508, 515 [125 Cal.Rptr. 365, 542 P.2d 237].)

██ Respondent did not seek to establish that it was exempt from coastal development permit requirements because it came within the parameters of section 30610. That section provides that no coastal development permit shall be required for certain types of development such as improvements to existing single-family residences, repair or maintenance activities that do not result in an addition to, or enlargement or expansion of the object of those repair or maintenance activities, and replacement of any structure, other than a public works facility, destroyed by a disaster. It could not do so because it did not "repair" anything. Without obtaining a permit, it added *new* construction which protruded seaward of the existing structures. Since there was no prior approval and since the revetment did not exist before the coastal act, there is no governmental estoppel.

Nor is respondent's asserted right to construct a revetment "fundamental" in the *Bixby-Strumsky* sense. Respondent seeks to avoid application of settled California land use law in determining standard of review by challenging the constitutionality of provisions of the coastal act and, because of that challenge, then argue its right is "fundamental." As we will explain *infra*, its constitutional challenge fails. Respondent's "right" to construct a *new* such revetment in a coastal area, an area of public trust, is not a right "already possessed" or "legitimately acquired." Respondent's use of its property must be subject to "reasonable restraints to avoid societal detriment." (*People* v. *Byers, supra,* at pp. 147-148.)

The original building permits for construction of residences did not give respondent a preexisting right to unregulated new construction. Moreover,

the Commission did not *deny* them the right to construct a revetment. The question is only the reasonableness of the conditions attached.

Section 30106 defines "development" as "the placement or erection of any solid material or structure; . . . change in the density or intensity of use of land . . .; construction, reconstruction, demolition, or alteration of the size of any structure . . . ." Respondent's revetment constituted a development which did not come within any of the permit exceptions and was not a "use actually instituted" which respondent had a right to continue or the concomitant right to protect. (See *Patterson* v. *Central Coast Regional Com.*, *supra*, at p. 843.) Thus Whaler's Village did not have a fundamental vested right to develop property in the coastal zone without a permit issued pursuant to the coastal act (*Georgia-Pacific Corp.* v. *California Coastal Com.* (1982) 132 Cal.App.3d 678, 697 [183 Cal.Rptr. 395]) and the appropriate standard of review for the trial court was the substantial evidence test. Consequently, we review the administrative record to determine whether the Commission's decision is supported by substantial evidence in light of the whole record. (*City of San Diego* v. *California Coastal Com.* (1981) 119 Cal.App.3d 228, 232 [174 Cal.Rptr. 5].)

II

*Dedication of Public Access*

Respondent contends that recent United States Supreme Court cases establish that the Commission's beach access and use conditions constitute a "taking" without just compensation prohibited by the Fifth Amendment of the United States Constitution. (*Penn Central Transp. Co.* v. *New York City* (1978) 438 U.S. 104 [57 L.Ed.2d 631, 98 S.Ct. 2646]; *Kaiser Aetna* v. *United States* (1979) 444 U.S. 164 [62 L.Ed.2d 332, 100 S.Ct. 383]; *Loretto* v. *Teleprompter Manhattan CATV Corp.* (1982) 458 U.S. 419 [73 L.Ed.2d 868, 102 S.Ct. 3164].)

Does the Commission's constitutional and statutory mandate allow it to exact access dedications as a condition of development? ■ There is a clearly enunciated state public policy in favor of allowing public access to shoreline areas. (*County of Los Angeles* v. *Berk* (1980) 26 Cal.3d 201, 222 [161 Cal.Rptr. 742, 605 P.2d 381]; Cal. Const., art. X, § 4.) One of the objects of the 1976 version of the coastal act was to preserve existing public rights of access to the shoreline and to expand them for the future. (*Pacific Legal Foundation* v. *California Coastal Com.* (1982) 33 Cal.3d 158, 163 [188 Cal.Rptr. 104, 655 P.2d 306].) This resulted from an awareness of the deterioration in the quality and availability of recreational land along

the California coastline due to the combined factors of increased demand and simultaneous decreased supply. (*Id.*, at p. 162.)

Section 30210, as amended in 1978, provides: "In carrying out the requirement of Section 4 of Article X of the California Constitution, maximum access, which shall be conspicuously posted, and recreational opportunities shall be provided for all the people consistent with public safety needs and the need to protect public rights, rights of private property owners, and natural resource areas from overuse."

Section 30211 provides that "[d]evelopment shall not interfere with the public's right of access to the sea where acquired through use or legislative authorization . . . ."

Section 30212 as amended through 1983 provides: "(a) Public access from the nearest public roadway to the shoreline and along the coast shall be provided in new development projects except where (1) it is inconsistent with public safety, military security needs, or the protection of fragile coastal resources, (2) adequate access exists nearby, or (3) agriculture would be adversely affected. Dedicated accessway shall not be required to be opened to public use until a public agency or private association agrees to accept responsibility for maintenance and liability of the accessway."

■ It is within this statutory framework that conditions requiring public access dedication are imposed upon the approval of coastal development permits, and courts have upheld damage to private property rights where the state or its subdivisions have acted to promote public trusts even though this action might be deemed a taking in a nontrust context. (*Grupe* v. *California Coastal Com.* (1985) 166 Cal.App.3d 148 [212 Cal.Rptr. 578]; Comment: *Public Beach Access Exactions: Extending The Public Trust Doctrine To Vindicate Public Rights* (1981) 28 UCLA L.Rev. 1049; for example, see *Miramar Co.* v. *City of Santa Barbara* (1943) 23 Cal.2d 170 [143 P.2d 1]; *Henry Dalton & Sons Co.* v. *Oakland* (1914) 168 Cal. 463 [143 P. 721].)

■ Respondent argues that its right of privacy is constitutionally protected and may be abridged only where there is a compelling public need. (*City of Santa Barbara* v. *Adamson* (1980) 27 Cal.3d 123, 130 [164 Cal.Rptr. 539, 610 P.2d 436, 12 A.L.R.4th 219].) What respondent disregards is that homeowners in Whaler's Village live adjacent to a constitutionally and statutorily designated area owned by the state in trust for all the people of the state. The right of privacy does not extend to exclusion of the public from access to public trust lands. Courts have liberally construed

the purposes of public trusts "to the end of benefiting all the people of the state." (*Colberg, Inc.* v. *State of California* Ex Rel. *Dept. Pub. Wks.* (1967) 67 Cal.2d 408, 417 [62 Cal.Rptr. 401, 432 P.2d 3]; see also *Miramar Co.* v. *City of Santa Barbara, supra,* 23 Cal.2d 170.) Thus we limit the scope of our inquiry to the question whether the Commission's use and access conditions bear a reasonable relationship to a proper legislative goal. (*Perez* v. *City of San Bruno* (1980) 27 Cal.3d 875, 890 [168 Cal.Rptr. 114, 616 P.2d 1287].)

■ Courts in this state have consistently recognized and upheld the Commission's authority to require dedication of public access as a condition of permit approval. (See *Natural Resources Defense Council, Inc.* v. *California Coastal Zone Conservation Com.* (1976) 57 Cal.App.3d 76, 92 [129 Cal.Rptr. 57]; *Frisco Land & Mining Co.* v. *State of California* (1977) 74 Cal.App.3d 736, 754 [141 Cal.Rptr. 820]; *Liberty* v. *California Coastal Com.* (1980) 113 Cal.App.3d 491, 500 [170 Cal.Rptr. 247]; *Grupe* v. *California Coastal Com., supra,* 166 Cal.App.3d 148, 165.) As stated in *Georgia-Pacific Corp.* v. *California Coastal Com., supra,* 132 Cal.App.3d 678, 699, "A regulatory body may constitutionally require a dedication of property in the interests of the general welfare as a condition of permitting land development. It does not act in eminent domain when it does this. . . ." Thus, as a general proposition, the Commission may constitutionally require uncompensated access dedication as a condition of approving coastal development. (*Id.,* at pp. 698-699; *Sea Ranch Ass'n.* v. *California Coastal Com'n* (N.D.Cal. 1981) 527 F.Supp. 390, 393-395, vacated because of mootness 454 U.S. 1070 [70 L.Ed.2d 606, 102 S.Ct. 622].)

■ Respondent argues that the general legislative goal of achieving maximum public access to the beach does not give the Commission unbridled discretion to impose an access condition upon a permit for construction which does not impede public access. Amicus curiae, Pacific Legal Foundation, contends that section 30212 does not authorize the commission to exact more public access from every beachfront development. Both read the legislative intent and the Commission's findings too narrowly.[3]

■ In *Remmenga* v. *California Coastal Com.* (1985) 163 Cal.App.3d 623, 627 [209 Cal.Rptr. 628], this court stated, "If as a condition to receipt of a permit, the applicant must donate property for a public use that bears no relationship to the benefit conferred on the applicant or the burden im-

---

[3]We granted Pacific Legal Foundation's request to respond to issues raised on appeal and its request that we take judicial notice of the Public Access Interpretive Guidelines adopted by the Commission February 20, 1980. (Evid. Code, §§ 452, 459.)

posed on the public, there is a taking of property without payment of just compensation in violation of the United States Constitution . . . . This is the basis for California court decisions invalidating such conditions . . . . [¶] Conversely, if there is such a rational relationship, the requirement of dedication of property or payment of money in lieu thereof is a validly imposed condition."

 *Loretto* v. *Teleprompter Manhattan CATV Corp., supra,* 458 U.S. 419, relied upon by respondent, is distinguishable from the instant case. In *Loretto,* a New York statute permitted Teleprompter, a cable television company, to install cables on apartment buildings to provide tenants with television service without paying owners of the buildings. There, as distinguished from the case before us, the apartment owners had taken no action which could trigger the police power of the state, and the Supreme Court found this physical intrusion improper unless payment was made. *Kaiser Aetna* v. *United States, supra,* 444 U.S. 164, is similar. In *Kaiser,* petitioners notified the Army Corps of Engineers of their plans to dredge and fill parts of Kuapa Pond, erect retaining walls and build bridges to create Hawaii Kai Marina. The corps advised them they were not required to obtain permits. The corps also acquiesced in a proposal to dredge an 8-foot deep channel to connect the pond to Maunalua Bay and Pacific Ocean. When it was finished, a dispute arose concerning whether property owners could deny public access to the pond. The Supreme Court found the corps' requirement of public access impermissible: "We have not the slightest doubt that the Government could have refused to allow such dredging on the ground that it would have impaired navigation in the bay, or *could have conditioned its approval* of the dredging on petitioners' agreement to comply with various measures that it deemed appropriate for the promotion of navigation. But what petitioners now have is a body of water that was private property under Hawaiian law, linked to navigable water by a channel dredged by them with the consent of the Government. While the consent of individual officials representing the United States cannot 'estop' the United States, . . . it can lead to the fruition of a number of expectancies embodied in the concept of 'property'-expectancies that, if sufficiently important, the Government must condemn and pay before it takes over the management of the landowner's property . . . ." (P. 179 [62 L.Ed.2d at p. 346]; italics added.)

In the instant case, it was the homeowners' action which triggered the police power to regulate what they were constructing and there was no prior governmental approval on which they relied. Moreover, there is no "set formula" to determine when "'justice and fairness' require that economic injuries caused by public action be compensated by the government,

rather than remain disproportionately concentrated on a few persons." (*Penn Central Transp. Co.* v. *New York City, supra,* 438 U.S. 104, 124 [57 L.Ed.2d 631, 648].) In an analogous setting, the United States Supreme Court, as well as the California Supreme Court have held that a zoning ordinance "may be unconstitutional and subject to invalidation only when its effect is to deprive the landowner of substantially all reasonable use of his property." (*Agins* v. *City of Tiburon* (1979) 24 Cal.3d 266, 277 [157 Cal.Rptr. 372, 598 P.2d 25]; see also *Pennsylvania Coal Co.* v. *Mahon* (1922) 260 U.S. 393, 413 [67 L.Ed. 322, 325, 43 S.Ct. 158, 28 A.L.R. 1321].) It is likely that the California Supreme Court would apply the same "diminution in value" test to determine whether a taking has occurred in the present context. (*Grupe* v. *California Coastal Com., supra,* 166 Cal.App.3d 148, 175.) While property values in Whaler's Village may not be as high without a private beach, it cannot be said that by offering to dedicate a public access easement, the homeowners would lose all reasonable use of their property and therefore all economic use (*ibid.;* citing *Agins, supra*) or that their burden is proportionately greater than other property owners who undertake new development within the coastal zone. Moreover, respondent is benefited by the permit to construct the revetment since the property is worth more with the protection of the revetment than without it. (See *Associated Home Builders etc., Inc.* v. *City of Walnut Creek* (1971) 4 Cal.3d 633, 644 [94 Cal.Rptr. 630, 484 P.2d 606, 43 A.L.R.3d 847].) In fact, without the revetment there might be no homes at all.

 Both respondent and amicus curiae contend that section 30212 is inapplicable to the instant case. That section mandates that "public access . . . to and along the coast shall be provided in new development projects." Respondent argues that Whaler's Village is not a new development and that the Commission's interpretation, i.e., that anything not specifically exempted from being a "new development" under section 30212, subdivision (b) is by definition a "new development," is unconstitutional as applied. We disagree.

The coastal act defines "new development" in exclusionary terms and projects not reached by the exclusionary definitions of section 30212 subdivision (b) are "new developments." (*Georgia-Pacific Corp.* v. *California Coastal Com., supra,* 132 Cal.App.3d 678, 698.) When statutes express certain exceptions to a general rule, other exceptions are not to be implied or presumed. (*Wildlife Alive* v. *Chickering* (1976) 18 Cal.3d 190, 195 [132 Cal.Rptr. 377, 553 P.2d 537].) Section 30106 broadly defines "development." Nevertheless, projects which present little adverse impact on the coastal resources do not require permits. (§ 30610.) Thus, homeowners may engage in a broad range of repair and maintenance activ-

ities, including replacing structures destroyed by disaster, without a permit. Additionally, a property owner may obtain a waiver of the permit requirements by the Commission's executive director for "de minimis" projects not specifically exempted by section 30610 ". . . if the executive director determines that it involves no potential for any adverse effect, either individually or cumulatively, on coastal resources. . . ." (§ 30624.7.) Furthermore, although the coastal act specifically allows revetments and seawalls to protect existing structures or public beaches in danger of erosion "when designed to eliminate or mitigate adverse impacts on local shoreline sand supply" (§ 30235), these constructions are not exempt from the "reasonable terms and conditions" requirements of section 30607.

Before imposing an access condition, the Commission must still assess the factors enumerated in section 30212, subdivision (a) and determine, how to impose necessary conditions "in a reasonable manner that considers the equities and that balances the rights of the individual property owner with the public's constitutional right of access pursuant to Section 4 of Article X of the California Constitution. . . ." (§ 30214, subd. (b).) Thus a finding of "new development" does not *automatically* impose a public access condition. In the instant case, the administrative record substantiated that there is inadequate lateral public access in the subject area.

 Respondent challenges the nexus between the Commission's finding that the revetment imposes a burden on the public which justifies imposition of the access condition and the evidence in the record. (See *Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506, 515 [113 Cal.Rptr. 836, 522 P.2d 12].) In point, respondent argues that the Commission found a public "burden" because seawalls *in general* tend to cause additional sand scour on any historically eroding beach but did not find that this particular revetment caused such damage. Although police power permits the imposition of reasonable conditions upon the landowner's proposal, not all conditions are valid and a grant of public privilege may not be conditioned upon the deprivation of constitutional protections. (*Scrutton* v. *County of Sacramento* (1969) 275 Cal.App.2d 412, 421 [79 Cal.Rptr. 872].) Where the conditions imposed are not reasonably related to the landowner's proposed use but are imposed by a public entity to shift the burden of providing the cost of a public benefit to one not responsible for or only remotely or speculatively benefiting from it, there is an unreasonable exercise of police power. (*Liberty* v. *California Coastal Com.* (1980) 113 Cal.App.3d 491, 502 [170 Cal.Rptr. 247].)

 The Commission found that "[t]he construction of this seawall constitutes 'new development' in accordance with Section 30212 because it

constitutes an intensification of land use which places a burden on public access to and along State tide and submerged lands. As a result, this project must provide for a corresponding public access benefit in the form of an offer to dedicate a lateral public access easement for passive recreational use."

There is substantial evidence in the administrative record to support the staff's conclusion that seawalls and revetments tend to cause sand loss from beach areas in front of and adjacent to them even if they protect immediate structures. Studies cited in staff reports concerning other permit applications before the Commission confirm the staff's finding that "by artificially building up the slope of the shore area, seawalls and revetments of this type tend to cause a landward retreat of the mean high tide line, potentially affecting the boundary between public and private lands along the beaches adjacent to the project as well as on the project site itself."

 As this court stated in *Remmenga* v. *California Coastal Com.*, it is firmly established that the justification for required dedication is not limited to the needs of or burdens created by the project. (163 Cal.App.3d 623, 628 citing *Ayres* v. *City Council of Los Angeles* (1949) 34 Cal.2d 31 [207 P.2d 1, 11 A.L.R.2d 503]; *Associated Home Builders, etc., Inc.* v. *City of Walnut Creek* (1971) 4 Cal.3d 633 [94 Cal.Rptr. 630, 484 P.2d 606, 43 A.L.R.3d 847].) "[E]ven if an individual project does not create an immediate need for a compensating accessway, one may be required of it if its effect together with the cumulative impact of similar projects would in the future create or increase the need for a system of such compensating accessways." (*Remmenga, supra,* at p. 628.) Although respondent's revetment may constitute only a small impediment to public access, ". . . when viewed as a part of the entire [coastline] as it develops in the future the proposed improvement may well be a link in a chain barring access or making access more difficult and costly." (*Id.,* at p. 630.)

 Additionally, section 30105.5 provides that ". . . the incremental effects of an individual project shall be reviewed in connection with the effects of past projects, the effects of other current projects, and the effects of probable future projects." Thus, the validity of the condition is not destroyed because the development has no *direct* nexus to the condition, the benefit to the public is greater than to the developer, or future needs are taken into consideration. (*Sea Ranch Ass'n* v. *California Coastal Com'n, supra,* 527 F.Supp. 390, 395.)[4] It is enough that the project "contributes,

---

[4]Although *Sea Ranch* was later vacated because enactment of section 30610.6 rendered it moot, we find its reasoning still apropos.

at least in an incidental manner" to the need for a particular extraction. (*Grupe* v. *California Coastal Com.*, *supra*, 166 Cal.App.3d 148, 167, fn. 11.)

 The Commission had sufficient information before it to conclude that, due to construction of this revetment *and others* up and down the coast, the erosive nature of the beaches in Ventura County coupled with the tendency of seawalls and revetments to increase the sand loss on beaches with a tendency to recede constitutes a cumulative adverse impact and places a burden on public access to and along state tide and submerged lands for which corresponding compensation by means of public access is reasonable. (See *Remmenga* v. *California Coastal Com.*, *supra*, at p. 630; *CEEED* v. *California Coastal Zone Conservation Com.* (1974) 43 Cal.App.3d 306, 321-323 [118 Cal.Rptr. 315].) Staff reports concerning various applications before the Commission referred to surveys of the Army Corps of Engineers and other experts concerning shoreline erosion along the California coast and, in particular, beach erosion in Ventura County. Opinion evidence of experts in environmental planning or ecological sciences is a permissible basis for decision. (*City of Chula Vista* v. *Superior Court* (1982) 133 Cal.App.3d 472, 491 [183 Cal.Rptr. 909].) Respondent stipulated to the admissibility of the administrative record. That stipulation specifically provided that the parties "waive their right to object to the competency of that administrative record."

Therefore, the condition of offering to dedicate an easement for public access was reasonably related to one of the principal objectives of the coastal act, which is to provide for maximum access to the coast by all the people in this state (§ 30001.5, subd. (c)) and was supported by the evidence in the record. Its relationship to the "nature and impact" of the proposed project was not a valid basis for the trial court's determination that the access condition deprived Whaler's Village of its constitutional rights. (*Georgia-Pacific Corp.* v. *California Coastal Com.*, *supra*, 132 Cal.App.3d 678, 699.)[5] Moreover, the burden of this condition may be minimal. If, as respondent argues, there is no need for public access at that particular location because it leads to another private beach, it is likely no public agency or private association will accept the offer to dedicate the public easement with its attendant liabilities and maintenance. (See *Grupe* v. *California Coastal Com.*, *supra*, 166 Cal.App.3d 148, 184.)

---

[5]We reject respondent's assertion that the Commission's abandonment of an appeal, discussed in *Pacific Legal Foundation* v. *California Coastal Com.*, *supra*, 33 Cal.3d 158, is a concession that the same studies upon which the Commission relies here do not support a showing that the revetment in question will have an adverse impact on lateral public access. The Mussel Shoals appeal involved repair to a seawall and section 30212, subdivision (b)(5) requires a showing that repair work will have an adverse impact on lateral public access.

## III

### *Abuse of Discretion*

Although we conclude that the Commission could impose the condition of offering to dedicate an easement for public access without offending constitutional principles, we find it abused its discretion in restricting respondent from interfering with the public's *present* use of the areas subject to easement prior to the acceptance of the offer. The provision in question turns the offer to dedicate public access into an immediate easement which imposes both liability and maintenance on the property owner and violates the express language of section 30212 as well as the Commission's Interpretative Guidelines. This restriction would be appropriate where public rights of access may have arisen through use or implied dedication. (See § 30211; *Gion* v. *City of Santa Cruz* (1971) 2 Cal.3d 29 [84 Cal.Rptr. 162, 465 P.2d 50].) However, there was no issue of public rights acquired through use in the instant case. Hence, that provision must fall.

The trial court found no support in the record or the coastal act for the conditions of waiver of claim of liability against the Commission or other public agency and acknowledgment that the property owners may not be eligible for public disaster funds.[6] We agree in part. The condition does not compel respondent to waive claims of *liability for issuance of the permit*, but for any damage from erosion hazard. Thus it waives liability for any act of any public agency that might cause erosion hazard. This condition, was overbroad. The Commission could extract a more narrowly drawn assumption of liability from erosion hazard and waiver of claims against the Commission or any agency involved in the issuance of the permit for damage caused by erosion or storms.

We agree with the trial court that there is no support in the record nor any legal authority offered to substantiate the condition that respondent acknowledge it may not be eligible for public disaster funds. The Commission will have to use other methods to alert permit applicants of this possibility.

The Commission contends that the trial court erred in refusing to remand the matter to the agency for corrective action. We disagree. The trial court remanded the matter to the Commission to issue the permit with-

---

[6]Government Code section 818.4 already provides immunity to public entities for issuance or refusal to issue permits.

out the offending conditions. Further proceedings were unnecessary since the Commission had already considered the matter carefully when it imposed the conditions. (See *Georgia-Pacific Corp.* v. *California Coastal Com.*, *supra*, 132 Cal.App.3d 678, 703; *Beach Colony II* v. *California Coastal Com.* (1984) 151 Cal.App.3d 1107, 1119 [199 Cal.Rptr. 195].)

IV

*Complaint for Civil Fines and Penalties*

 The Commission contends the trial court's decision to deny it any recovery in the penalties action should be reversed and the matter remanded for hearing on the issue of the amount to be assessed against Whaler's Village for its violation of the coastal act. Respondent counters that to have sought and accepted the permit with the challenged conditions could have constituted a waiver of its right to challenge the conditions. (*County of Imperial* v. *McDougal* (1977) 19 Cal.3d 505, 510-511 [138 Cal.Rptr. 472, 564 P.2d 14]; but see *McLain Western #1* v. *County of San Diego* (1983) 146 Cal.App.3d 772, 775-776 [194 Cal.Rptr. 594].)

It has been held that a violator's good faith belief in the legality of his actions presented a defense to the imposition of civil penalties if such belief is found to have been reasonably entertained. (See *South Coast Regional Com.* v. *Gordon* (1978) 84 Cal.App.3d 612, 617-618, fn. 7 [148 Cal.Rptr. 775], citing *No Oil, Inc.* v. *Occidental Petroleum Corp.* (1975) 50 Cal.App.3d 8, 30 [123 Cal.Rptr. 589].) Here, Whaler's Village knew it needed a permit for construction in 1980 and the trial court acknowledged a permit was required for revetment activities, including mechanized construction in 1980 and repairs in 1981. The question presented is whether, due to the extensive time-span, i.e., 1978-1981, in which respondent was involved in planning and construction of the revetment and the withdrawal of its 1978 permit application, its actions could be interpreted as a "good faith belief reasonably entertained of the legality of [its] conduct." (*South Coast Regional Com.* v. *Gordon, supra*, 84 Cal.App.3d 612, 617-618.) Because of its incorrect ruling on the validity of all the conditions, the trial court should have the opportunity to redetermine whether, when respondent violated the coastal act in constructing the revetment and repairing it without the appropriate coastal permit, its actions were in good faith and its violations intentional. Therefore, we remand the matter to the trial court for a determination of the Commission's action for injunctive relief and civil penalties in light of the opinion.

The judgment is reversed in part to allow the Commission to reissue the permit with the condition that respondent irrevocably offer for a period of

21 years to dedicate to a public agency or private association approved by the executive director, an easement for public access and passive recreational use along the shoreline and that respondent assume liability for damage from erosion and waive claims against the Commission and any other public agency involved in issuance of the permit for any damage caused by erosion hazard. We remand to the trial court the issue of the Commission's action for injunctive relief and civil penalties for determination in light of this opinion. The judgment is otherwise affirmed.

Each party to bear its own costs.

Gilbert, J., and Abbe, J., concurred.

Respondent's petition for review by the Supreme Court was denied December 31, 1985. Mosk, J., and Lucas, J., were of the opinion that the petition should be granted.