TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

BILL LOCKYER
Attorney General

|  |  |  |
|---|---|---|
| OPINION | : | No. 99-611 |
| of | : | December 16 , 1999 |
| BILL LOCKYER Attorney General | : | |
| CLAYTON P. ROCHE Deputy Attorney General | : | |

THE HONORABLE SALLY M. HAVICE, MEMBER OF THE CALIFORNIA STATE ASSEMBLY, has requested an opinion on the following question:

May a physician enter into an agreement with a group of licensed and certified professionals to perform work hardening and rehabilitation services for patients, where the physician would control the scope of the services by prescription, obtain payment from a workers' compensation insurance carrier for the services, and retain a portion of the fee after compensating the group?

CONCLUSION

A physician may not enter into an agreement with a group of licensed and certified professionals to perform working hardening and rehabilitation services for patients, where the physician would control the scope of the services by prescription, obtain payment from a workers' compensation insurance carrier for the services, and retain a portion of the

fee after compensating the group.

ANALYSIS

"Work hardening services" allow an employee who has been injured to return to work by practicing on tasks relevant to a specific job. If the worker is unable to perform the tasks, certain work restrictions may be required, the worker may be given a different job, or he or she may be provided vocational rehabilitation for re-training. Performing in a workplace simulation exercise increases the worker's chances to return to employment successfully, given the permanent nature of the injury. (See *In re Marriage of Heistermann* (1991) 234 Cal.App.3d 1195, 1198, fn. 5; see also *Belmontez* v. *Workers' Comp. Appeals Bd.* (1992) 7 Cal.App.4th 786, 789.)

Under the proposed agreement, a physician would obtain payment from a workers' compensation insurance carrier for the performance of work hardening services as allowed under the Workers' Compensation Law (Lab. Code, §§ 3200-6992).[1] The physician would provide a prescription for the services to a group of licensed and certified professionals such as other physicians and psychologists ("occupational injury group"). The physician would pay the group for the services performed and retain the balance of the fee. We are asked whether the proposed agreement between the physician and the occupational injury group would be lawful. We conclude that it would violate the terms of section 139.3.

Section 139.3 provides:

"(a) Notwithstanding any other provision of law, to the extent those services are paid pursuant to Division 4 (commencing with Section 3200), it is unlawful for a physician to refer a person for clinical laboratory, diagnostic nuclear medicine, radiation oncology, *physical therapy, physical rehabilitation,* psychometric testing, home infusion therapy, or diagnostic imaging goods or services whether for treatment or medical-legal purposes if the physician or his or her immediate family has a financial interest with the person or in the entity that receives the referral.

"(b) For purposes of this section and Section 139.31, the following shall apply:
". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
. . . .

_____

[1] All references hereafter to the Labor Code are by section number only.

"(4) A 'financial interest' includes, but is not limited to, any type of ownership, interest, debt, loan, lease, compensation, remuneration, *discount, rebate,* refund, dividend, distribution, subsidy, or other form of direct or indirect payment, whether in money or otherwise, between a licensee and a person or entity to whom the physician refers a person for a good or service specified in subdivision (a). A financial interest also exists if there is an indirect relationship between a physician and the referral recipient, including, but not limited to, an arrangement whereby a physician has an ownership interest in any entity that leases property to the referral recipient. Any financial interest transferred by a physician to, or otherwise established in, any person or entity for the purpose of avoiding the prohibition of this section shall be deemed a financial interest of the physician.

"(5) A 'physician's office' is either of the following:

"(A) An office of a physician in solo practice.

"(B) *An office in which the services or goods are personally provided by the physician or by employees in that office, or personally by independent contractors in that office*, in accordance with other provisions of law. Employees and independent contractors shall be licensed or certified when that licensure or certification is required by law.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."
(Italics added.)

Section 139.31 sets forth a number of exemptions to section 139.3's proscription. The only exemption relevant here is subdivision (e) of section 139.31, which provides:

"The prohibition of Section 139.3 shall not apply to any service for a specific patient that is performed within, or goods that are supplied by, a physician's office, or the office of a group practice. Further, the provisions of Section 139.3 shall not alter, limit, or expand a physician's ability to deliver, or to direct or supervise the delivery of, in-office goods or services according to the laws, rules, and regulations governing his or her scope of practice. . . ."

Completing the statutory framework for our analysis, we note that the Administrative Director of the Division of Industrial Accidents has established a fee schedule applicable to rehabilitation services provided to injured workers, setting the amount a workers'

compensation insurance carrier will pay for such services.  (See §§ 139.5, 4635-4647; 5307.1, 5307.3, Cal. Code Regs., tit. 8, § 10132.)

In construing the provisions of sections 139.3 and 139.31, we are guided by well recognized  rules of statutory construction.  "To interpret statutory language, we must 'ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citation.]" (*California Teachers Assn.* v. *Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 632.)  "Our first step is to scrutinize the actual words of the statute, giving them a plain and commonsense meaning. [Citations.]" (*People* v. *Vallodoli* (1996) 13 Cal.4th 590, 597.)  "When statutes express certain exceptions to a general rule, other exceptions are not to be implied or presumed.  [Citation.]"  (*Whaler's Village Club* v. *California Coastal Com.* (1985) 173 Cal.App.3d 240, 258.)

Section 139.3 applies when the health services are paid by a workers' compensation insurance carrier pursuant to section 3200.  With respect to the proposed agreement, the physician would have a proscribed "financial interest" as defined in section 139.3, subdivision (b)(4).  The physician would in effect receive a "discount" from the occupational injury group, allowing the physician to keep a portion of the fee paid by the workers' compensation insurance carrier for the work hardening services.  This could also be considered a "rebate" for the physician in the sharing of the fee with the group.

As for the exemption of section 139.31, subdivision (e), the independent contractors covered by the exemption must provide the health services "within . . . a physician's office . . . ."  The exemption is inapplicable when the services are preformed outside of the physician's office, as is contemplated under the proposed agreement.

Nevertheless, it is urged that the proposed agreement would be lawful because the insurance carrier would be paying only the fee prescribed by law as the "fair market value."  We, however, consider this to be immaterial.  Statutory prohibitions against professional discounts, rebates, and other forms of "direct or indirect payment" are to ensure that referrals of health services are based solely upon considerations of what would be in the best interests of the patients.  (See *Beck* v. *American Health Group Internat., Inc.* (1989) 211 Cal.App.3d 1555, 1564; *Mason* v. *Hosta* (1984) 152 Cal.App.3d 980, 986; *Magan Medical Clinic* v. *State Bd. of Medical Examiners* (1967) 249 Cal.App.2d 124, 130-133; 77 Ops.Cal.Atty.Gen. 143, 144 (1994); 70 Ops.Cal.Atty.Gen. 65, 67 (1987): 68 Ops.Cal. Atty.Gen. 28, 31; 65 Ops.Cal.Atty.Gen. 252, 253 (1982); 63 Ops.Cal.Atty.Gen. 89, 91-93 (1980).)  Here, the discounts accorded the physician would not be given with the best interests of the patients or insurance carriers in mind, but rather with the best interests of the physician  and  occupational  injury  group  in  mind.   The  physician  would  receive

"consideration" for the referrals made to the group.[2]

Accordingly, we conclude that a physician may not enter into an agreement with a group of licensed and certified professionals to perform work hardening and rehabilitation services for patients, where the physician would control the scope of the services by prescription, obtain payment from a workers' compensation insurance carrier for the services, and retain a portion of the fee after compensating the group.

\* \* \* \* \*

---

[2] We would reach the same conclusion, following the same type of analysis, by examining the referral proscription of Business and Professions Code section 650 applicable to health care professionals in general.